E. J. CROFOOT, II, et al., Plaintiffs,

v.

SPERRY RAND CORPORATION, Defendant.

Civ. No. S-75-286.

United States District Court, E. D. California.

March 3, 1976.

Charles D. Chalmers and Weld, Freeland & Chalmers, San Francisco, Cal., for plaintiffs.

Overton, Layman & Prince, Carl J. Schuck, John Cramer, Brenton F. Goodrich, Los Angeles, Cal., for defendant.

## OPINION

MacBRIDE, Chief Judge.

Store-to-Door Telephone Supermarkets was founded on August 23, 1971, as a California corporation. The primary asset of Store-to-Door Telephone Supermarkets [hereafter Store-to-Door] was an idea. During 1971 and 1972, Store-to-Door undertook in Sacramento to devel-

op a business whereby a person wishing to order groceries could phone in his order to Store-to-Door and Store-to-Door would fill the order and make delivery to the customer's door. The business, however, was unsuccessful.

Plaintiffs in this action are a number of investors who unhappily purchased shares in Store-to-Door. The amended complaint herein alleges that defendant. Sperry Rand Corporation [hereafter Sperry Rand], a Delaware corporation, is guilty of securities law violations, specifically of Section 10(b) of the Securities Exchange Act of 1934, Title 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 CFR § 240.10b–5.

Section 10(b) provides in material part as follows:

"It shall be unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5 provides as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange:

(a) To employ any device, scheme or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit

upon any person, in connection with the purchase or sale of any security."

The case is currently before this court on the motion by Sperry Rand to dismiss pursuant to FRCP 12(b)(6), failure to state a claim upon which relief can be granted. On such a motion to dismiss, this court must accept the allegations of the complaint as true and cannot dismiss unless it appears beyond doubt that under no set of facts can plaintiffs state a cause of action which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Accordingly, affording the amended complaint herein the liberal reading to which it is entitled on a motion to dismiss and construing every reasonable inference in plaintiffs' favor, this court views as "true" the following alleged facts: (1) Store-to-Door submitted to Sperry Rand a prospectus of its proposed operation and sought from Sperry Rand a proposal on computer hardware and software; (2) Sperry Rand knew from the information contained in the prospectus that computer hardware and software would be the backbone of Store-to-Door's business venture; (3) Sperry Rand submitted a proposal to Store-to-Door which warranted that it could produce the desired system and approved the plan of financing for the business project; (4) Sperry Rand knew that its proposal contained misrepresentations and did not disclose material facts; (5) Prior to its misrepresentations and non-disclosures, Sperry Rand knew that Store-to-Door existed as an undercapitalized promotional shell and Sperry Rand knew that compensation for its services would come from the sale of Store-to-Door stock to the public; (6) Sperry Rand had superior knowledge in the computer hardware and software business and knew that plaintiffs were unsophisticated and could not reasonably evaluate the risks of investment in Store-to-Door stock without full disclosure of the risk factors involved; (7)

Sperry Rand's proposal was reasonably calculated to reach and influence the investing public.

The primal legal question presented by this case concerns the extent of liability pursuant to Section 10(b) and Rule 10b–5 of a defendant who is not the actual *seller* of a security. Plaintiffs contend that under the facts alleged, Sperry Rand falls within the permissible scope of Section 10(b) and Rule 10b–5 liability. Defendant asserts that as a matter of law and within the facts as alleged, it cannot be held liable for a securities act violation. Notwithstanding the submission of extensive memoranda of law and a request by the court for re-briefing, the parties to this action both contend that they cannot find any case directly on point and that the facts of this action present a case of first impression.

After thorough consideration of the purposes behind the Securities Exchange Act of 1934, the cases cited by the parties, and the applicable law, and fully cognizant that the determination is not completely free from doubt, this court nevertheless concludes that plaintiffs have stated a cause of action pursuant to Section 10(b) and Rule 10b–5 and that, accordingly, defendant's motion to dismiss must be denied.

At the very heart of the inquiry is the Securities Exchange Act of 1934. Enacted during the New Deal period, the 1934 Act embraces a "fundamental purpose . . . to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry." *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Securities and Exchange Commission v. Capital Gains Research Bureau,* 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). The 1934 Act thus has the dual purpose of providing for the regulation of the securities and over-the-counter market and protecting the investor from inequitable and unfair practices in such markets. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

The Supreme Court has often noted that Section 10(b) must be read flexibly and not technically and restrictively. *Superintendent of Insurance v. Bankers Life,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *Affiliated Ute Citizens v. United States, supra.* As noted by the Second Circuit Court of Appeals in *Competitive Associates Inc. v. Laventhol,* 516 F.2d 811 (2d Cir. 1975), and as quoted by the Supreme Court in *Superintendent of Insurance v. Bankers Life, supra* :

> "[We do not] think it sound to dismiss a complaint merely because the alleged scheme does not involve the type of fraud that is 'usually associated with the sale or purchase of securities.' We believe that § 10b and Rule 10b–5 prohibit *all* fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involved a garden type variety of fraud, or present a unique form of deception. Novel or atypical methods should not provide immunity from the securities laws."

To achieve the desired end of truth in the marketplace, the courts have not been parsimonious in their construction of the phrase "in connection with" as it relates to potential defendant liability. In recognition that the marketplace is, in fact, a busy place where face-to-face contact between buyer and seller is the exception and not the rule, the modern approach has avoided the strict notion of privity in determining who may or may not be a defendant in Section 10(b) and Rule 10b–5 actions. See for example *Sargent v. Genesco, Inc.,* 492 F.2d 750 (5th Cir. 1974); *Mitchell v. Texas Gulf Sulphur Co.,* 446 F.2d 90 (10th Cir. 1971), cert. denied, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558, rehearing denied, 404 U.S. 1064, 92 S.Ct. 734, 30 L.Ed.2d 754 (1972); *Heit v. Weitzen,* 402 F.2d 909 (2d Cir. 1968); *Texas Continental Life Insurance Co. v. Dunne,* 307 F.2d 242 (6th Cir. 1962); *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366 (N.Y.1973).

Indeed, the rule appears well-established that a plaintiff who is induced to buy or sell stock as a result of misrepresentations made by someone not a party to the sale may sue that person for damages incurred as a result of the sale. See *G & M, Inc. v. Newbern*, 488 F.2d 742 (9th Cir. 1973). Liability under Section 10(b) and Rule 10b–5 has been imposed on a host of potential defendants as long as the participation of the defendant in the fraudulent scheme or device was substantial. *Zabriskie v. Lewis*, 507 F.2d 546 (10th Cir. 1974). Thus, in addition to the liability of actual sellers or purchasers of securities who utilize fraudulent schemes in connection with the purchase or sale, the courts have not been niggardly in finding potential liability as to "aiders and abettors," conspirators, mutual actors, and professional consultants such as attorneys and accountants. See for example *Woodward v. Metro Bank of Dallas*, 522 F.2d 84 (5th Cir. 1975).

Were Store-to-Door the alleged malefactor in the instant case, and were Sperry Rand an alleged conspirator or aider and abettor to Store-to-Door, this court would have no difficulty in deciding that a cause of action had been properly stated against Sperry Rand for securities law violations. Because Sperry Rand is instead charged with the active role in a fraudulent scheme and Store-to-Door assumes the role of a mere conduit for that scheme should not lessen the potential liability of Sperry Rand under the securities law. If truth in the marketplace is the goal of Section 10(b) and Rule 10b–5, then from the perspective of plaintiffs herein, holding Sperry Rand liable as a conspirator or aider and abettor in the first example, while failing to hold Sperry Rand liable for its alleged active, independent, and sole activity in the second example is a distinction which defies logic.

In its latest memoranda of law to the court, Sperry Rand places considerable reliance on the recent Supreme Court decision in *Blue Chip Stamps v. Manor Drug Stores, supra*. It is true that the *Blue Chip* court was faced, just as this court is faced, with an interpretation of the "in connection with" language of Section 10(b) and Rule 10b–5. However, on its facts, *Blue Chip* was merely a confirmation of the so-called "Birnbaum Rule" which limits the potential *plaintiffs* in private Section 10(b) and Rule 10b–5 actions to actual purchasers or sellers of the securities in question. Thus, *Blue Chip* was a standing case dealing with the scope of who can be a plaintiff. The instant case, as noted, deals with the question of who can be a *defendant* in Section 10(b) and Rule 10b–5 actions.

Sperry Rand has contended, however, that the *Blue Chip* holding should be construed also to limit the range of possible defendants in Section 10(b) and Rule 10b–5 cases. As part of the rationale for reaffirming the "Birnbaum Rule," the Supreme Court in *Blue Chip* recognized the great potential for vexatious litigation and "strike suits" if the class of plaintiffs were not limited to actual purchasers or sellers. For example, the Supreme Court suggested that in the absence of the "Birnbaum Rule," it would be sufficient for a plaintiff to prove that he had merely *failed* to purchase or sell a stock by reason of a defendant's violation of Section 10(b) and Rule 10b–5. Were this the kind of allegation sufficient to state a claim for securities law violations, then the potential class of plaintiff would be virtually open-ended and the possible liability of a defendant could be unlimited.

Notwithstanding the Supreme Court's justifiable apprehension of vexatious litigation by an unlimited class of plaintiffs, there is no reason to read between the lines of *Blue Chip* a fear of vexatious litigation which would limit the range of potential defendants.

Also in support of its motion to dismiss, Sperry Rand places reliance on the Ninth Circuit Court of Appeals decision in *Wessel v. Buhler*, 437 F.2d 279 (9th Cir. 1971). That case held that an independent certified public accountant, who was retained on three separate occasions

to prepare financial statements for a corporation, could not be held liable for securities violations even though it was assumed by the court that the financial statements were false. With *Wessel* and with the similar case of *Landy v. FDIC,* 486 F.2d 139 (3d Cir. 1973), Sperry Rand argues that this court should not hold liable a "mere vendor" such as itself. However, the *Wessel* case is clearly distinguishable on its facts from the present case. As the Court of Appeals noted in *Wessel*:

> "None of the three financial statements was made 'in a manner reasonably calculated to influence the investing public.' None was publicly disseminated in any way. There was no evidence that any investor ever saw the statements until after the litigation began. The evidence was that [the accountant] delivered them to the Board for uses unconnected with stock issuance . . . ."

In the instant case, the allegations of the amended complaint state that Sperry Rand *knew* that compensation for its services would come from money generated by a public offering of Store-to-Door stock, which public offering would necessarily be made by Store-to-Door in reliance on the false information supplied by Sperry Rand. This was the "scheme" to defraud. Therefore, in the instant case, under the allegations of the amended complaint and the reasonable inferences that can be drawn therefrom, it must be said that the information supplied by Sperry Rand *was* reasonably calculated to influence the investing public, albeit through the conduit of Store-to-Door.

Indeed, this distinction was recently recognized by the Second Circuit Court of Appeals in the case of *Competitive Associates Inc. v. Laventhol,* 516 F.2d 811 (2d Cir. 1975). In that case, an independent accountant *was* held potentially liable under Section 10(b) and Rule 10b–5. The Second Circuit held its case to be

distinguishable from both *Wessel* and *Landy*:

> "[In those cases] the court premised the result on a finding that the accountants involved did not know or expect their results to be relied upon by anyone other than the members of the entity for which the reports were specifically prepared and therefore were not reasonably calculated to influence the investing public."

Sperry Rand also contends that the motion to dismiss must be granted or else this court would be extending the reach and scope of Section 10(b) and Rule 10b–5 to transactions which are "merely commercial" in nature and to defendants who are "mere vendors."

■ This contention by Sperry Rand, of course, begs the question before this court. That is, just because defendant may be liable to Store-to-Door [1] as a vendor does not, in and of itself, mean that defendant could not *also* be liable for a securities law violation.

■ In the instant case, under the facts as herein alleged, this court believes that a sufficient nexus has been established between plaintiffs and defendant, as a result of defendant's alleged conduct, to satisfy the "in connection with" requirement of Section 10(b) and Rule 10b–5. It must be remembered that the Supreme Court, in *Superintendent v. Bankers Life and Casualty Co., supra,* has broadly interpreted the "in connection with" language to require only that plaintiff shall have "suffered an injury as a result of deceptive practices *touching* its sale [or purchase] of securities as an investor." As noted earlier, it would be a distinction without a difference to hold Sperry Rand potentially liable as a conspirator or an aider and abettor of Store-to-Door, and yet hold Sperry Rand immune from Section 10(b) and Rule 10b–5 liability where Store-to-Door is an innocent or passive conduit in Sperry Rand's alleged fraudulent gambit.

---

1. There is in fact another action, *Store-to-Door v. Sperry Rand,* Civ. S–2708, currently pending in this court.

In fact, the Ninth Circuit Court of Appeals has been in the forefront of those courts which have on the one hand, been flexible and imaginative in adjusting the scope of Section 10(b) and Rule 10b–5 liability to accommodate unique or novel forms of deception, while on the other hand disdaining the use of labels to denote the scope of defendant liability. In establishing a "flexible duty standard" and analysis in Section 10(b) and Rule 10b–5 cases, the Ninth Circuit recently noted in *White v. Abrams,* 495 F.2d 724 (9th Cir. 1974):

> "The proper analysis, as we see it, is not only to focus on the duty of the defendant, but to allow a flexible standard to meet the varied factual contexts without inhibiting the standard with traditional fault concepts which tend to cloud rather than clarify. By adopting such a duty analysis, we avoid the confusion that arises from classifying the defendants as primary and secondary, or from classifying the transactions as direct and indirect. This flexible approach, as compared to the compartmentalized approach, does away with the necessity of creating a separate pigeonhole for each defendant whose involvement in the transaction in question may not fit nicely into one of the previously defined classes."

Under the flexible duty standard announced by *White v. Abrams,* this court cannot say that as a matter of law and under the facts alleged in the amended complaint, plaintiffs could state no cause of action which would entitle them to relief under Section 10(b) and Rule 10b–5.

This court is, further, not unmindful of the important public policy considerations to which account must be given. Sperry Rand has argued that there is nothing unique about the fact that shares will be sold by a corporation to raise the capital to pay for products supplied by a vendor, and were this court to hold Sperry Rand potentially liable for a securities law violation, the floodgates of Section 10(b) and Rule 10b–5 litigation would be opened for any investor to sue any vendor who has sold goods or services to a corporation which paid for such goods and services by funds raised by a sale of securities to the investor in question. This court, respectfully, does not purport to open a Pandora's Box of securities litigation. Certainly, as Sperry Rand contends, there is nothing *per se* unusual about the sale of shares by a vendor. What *is* unusual is the scheme to defraud which is alleged to have been perpetrated by the "vendor" in the instant case. The proof of the allegations herein will, of course, await resolution at trial or, perhaps, upon appropriate motions for summary judgment. The allegations themselves, however, sufficiently state a cause of action for violations of Section 10(b) and Rule 10b–5.

It is therefore the conclusion and order of this court that defendant's motion to dismiss be and hereby is denied.

In accordance with the policy enunciated in Title 28 U.S.C. § 1292(b), this court is of the opinion that (1) the order entered herein is not otherwise appealable; (2) such order involves a controlling question of law as to which there is substantial ground for difference of opinion; and (3) an immediate appeal from such order may materially advance the ultimate termination of the litigation.