**William BACKLUND, and Patricia Backlund, his wife, Amy Backlund, a minor, Pamela Backlund, f/a/k/a Pamela Mortenson, a minor, and William Backlund, Guardian ad Litem, Plaintiffs-Appellants,**

**v.**

**Patricia S. BARNHART and John Doe Barnhart, her husband; Carlene Brevik and John Doe Brevik, her husband; Nancy Ann Cole and John Doe Cole, her husband, Defendants-Appellees.**

No. 85–3940.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 1985.

Decided Dec. 17, 1985.

Nathan James Neiman, Redmond, Wash., for plaintiffs-appellants.

Betty Edwards, Olympia, Wash., for defendants-appellees.

Before WRIGHT and REINHARDT, Circuit Judges, and INGRAM,[*] District Judge.

EUGENE A. WRIGHT, Circuit Judge.

Are state officials who prevent foster parents from exercising their religious beliefs about discipline immune from damage suits under 42 U.S.C. § 1983? We affirm the trial court's decision that the state officials in this case had authority to decide what was best for the foster child, and that

[*] For the Northern District of California.

they violated no clearly established constitutional rights of the foster parents.

BACKGROUND

In 1978, eight-year-old Pamela Mortenson was placed in the Backlunds' home for foster care. About a year later, the Backlunds took preliminary steps to adopt her.

In September 1980, the Washington State Department of Social and Health Services (DSHS) received a confidential complaint alleging that Pamela had been physically abused. Appellees Brevik and Cole were assigned to investigate. They held several meetings with Pamela and the Backlunds, and consulted with their supervisor, appellee Barnhart, and with a psychiatrist, Dr. Reiter.

The Backlunds explained that they followed a "Biblical mandate" requiring them to spank Pamela occasionally with a paddle or stick. Brevik and Cole were concerned because Pamela had been abused by her parents before placement with the Backlunds.

In January 1981, Brevik and Cole told the Backlunds that they must stop using corporal punishment. When the Backlunds refused as a matter of religious principle, Brevik and Cole arranged to return the next day and remove Pamela.

The Backlunds filed a petition in Superior Court to recover Pamela. In February 1981, Commissioner Epstein granted the petition on condition that the Backlunds limit their use of corporal punishment and receive counseling. Several weeks later, Dr. Backlund wrote to Commissioner Epstein saying that he did not intend to obey the order limiting punishment.

Meanwhile the Backlunds applied formally to adopt Pamela. Appellee Cole filed a report opposing final adoption until the dispute over corporal punishment could be resolved. A different case worker later recommended allowing the adoption. The adoption became final in July 1981.

PROCEEDINGS BELOW

The Backlunds sued the State of Washington under Section 1983 in October 1981. When the state moved to dismiss on grounds of Eleventh Amendment immunity, the Backlunds filed an amended complaint against the DSHS and the three appellees. The DSHS was later dismissed.

Appellees Barnhart, Brevik and Cole moved for dismissal under Fed.R.Civ.P. 12(b)(1)[1] and 12(b)(6), but Judge McGovern denied the motion. Appellees then moved for summary judgment, which was granted on April 25, 1985 by Judge Dimmick, to whom the case had been reassigned. Judgment was entered on May 2.

The Backlunds moved for reconsideration and Judge Dimmick denied it on June 7. The Backlunds gave notice of appeal on June 12.

SCOPE OF THE APPEAL

The Backlunds desire review of both the denial of reconsideration and the earlier summary judgment. The summary judgment cannot be disturbed unless the 30-day deadline of Fed.R.App.P. 4(a)(1) was postponed. If the Backlunds' motion for reconsideration was brought under Fed.R.Civ.P. 59(e), the deadline was postponed; if under Rule 60(b), it was not. Fed.R.App.P. 4(a)(4). The Backlunds failed to specify the nature of their motion.

The appellees apparently assume that the appeal is a timely challenge to the summary judgment, so we must examine our jurisdiction *sua sponte.* We conclude the result is the same whether the scope of appeal is narrow or broad.

DENIAL OF MOTION TO RECONSIDER

Whether the Backlunds' motion for reconsideration was brought under Rule 59(e) or 60(b), we review the trial court's denial for an abuse of discretion. *Plotkin v. Pacific Telephone & Telegraph,* 688 F.2d 1291, 1292 (9th Cir.1982) (60(b)); *Safeway Stores v. Fannan,* 308 F.2d 94, 98 (9th Cir.1962) (59(e)).

A motion for reconsideration of summary judgment is appropriately brought under Rule 59(e). *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 811 (9th Cir. 1981); 6 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.26–1, at 56–1549 (2d ed. 1985). The motion was properly denied here because, as Judge Dimmick noted, it presented no arguments that had not already been raised in opposition to summary judgment.

A motion for reconsideration also may be brought under Rule 60(b) if the moving party can show (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or other misconduct; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) any other reason justifying relief from operation of judgment. Relief under exception (6) above requires a finding of "extraordinary circumstances." *McConnell v. MEBA Medical & Benefits Plan,* 759 F.2d 1401, 1407 (9th Cir.1985).

The Backlunds did not argue that their case falls within any of these exceptions. Nor could they do so successfully. The trial court properly denied their reconsideration motion.

MERITS OF THE SUMMARY JUDGMENT

Assuming a valid appeal of the summary judgment order, we review *de novo. Continental Casualty Co. v. City of Richmond,* 763 F.2d 1076, 1078–79 (9th Cir. 1985).

The Backlunds argue that their treatment of Pamela is a constitutionally protected exercise of sincere religious beliefs. Appellees had actual knowledge, the Backlunds say, that their interference with this protected conduct was unconstitutional.

Judge Dimmick granted summary judgment for appellees, holding that they were protected by qualified "good faith" immunity:

> Although the Court cannot say, at this stage of the proceedings, that the danger

*See McIntyre v. McIntyre,* 771 F.2d 1316, 1317–18 (9th Cir.1985).

---

1. This claim was based on the domestic relations exception to federal court jurisdiction.

to Pamela was sufficient to warrant limiting plaintiffs' exercise of their religious beliefs, the Court does find that reasonable persons in the defendants' position could not [sic [2]] have reached a contrary conclusion. That is, defendants did not unreasonably conclude that plaintiffs' First Amendment rights were subordinate to that which the defendants believed necessary for the child's well-being.

We are bound by *Davis v. Scherer,* —— U.S. ——, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984):

> A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue.

*See also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[3] This standard is objective and is appropriate for summary disposition by a trial judge. *Id.; see Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (referring to the "essentially legal question" of qualified good faith immunity).

*Harlow, Davis,* and *Mitchell* make it clear that, to survive summary judgment, a plaintiff must offer more than general conclusory allegations that the defendant violated his First or Fourteenth Amendment rights. He must show that the defendant violated a particular "clearly established" right; for example, his right to testify before Congress without reprisal (*Harlow*), to a hearing before being fired from the Highway Patrol (*Davis*), to freedom from warrantless wiretaps (*Mitchell*). In other words, the plaintiff must show that *the particular facts* of his case support a claim of clearly established right.

■ To survive summary judgment, the Backlunds must show that they, as foster parents, had a clearly established right to exercise their religious beliefs about punishment on a foster care child.[4] They fail to cite any pertinent authority on this issue. Nor can they, for the following reasons.

First, even natural parents have no clearly established right to unlimited exercise of religious beliefs on their children:

> Acting to guard the general interest in youth's well-being, a state as *parens patriae* may restrict the parents' control by requiring school attendance, regulating or prohibiting the child's labor and in many other ways. Its authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience. Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds.

*Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (citations omitted).

Second, foster parents do not enjoy the same constitutional protections that natural parents do. *See Kyees v. County Department of Public Welfare,* 600 F.2d 693, 698 (7th Cir.1979); *Drummond v. Fulton County Department of Family & Children's Services,* 563 F.2d 1200, 1206–07 (5th Cir.1977) (en banc), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978); *Sherrard v. Owens,* 484 F.Supp. 728, 740–41 (W.D.Mich.1980), *aff'd,* 644 F.2d 542 (6th Cir.) (per curiam), *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981). *Contra Brown v.*

---

**2.** The word "not" appears to have crept in by mistake.

**3.** *Harlow* was a suit against federal officials. *Davis* extended the rule of qualified immunity to state officials. 104 S.Ct. at 3020 n. 12. It should be noted that qualified immunity shields an official from liability for damages only, not from a finding that he violated constitutional rights. *Id.* at 3018.

**4.** Pamela's status was defined by Washington law. According to Wash.Rev.Code § 26.36.010, Pamela was a ward of the state until released by order of the court in July 1981.

*County of San Joaquin,* 601 F.Supp. 653, 665 (E.D.Cal.1985). In *Drummond,* plaintiff brought a Section 1983 action because the county removed his foster child without due process. The court refused to find a Fourteenth Amendment violation because Drummond had no liberty or property interest in the child:

> True liberty rights do not flow from state laws, which can be repealed by action of the legislature.... The very fact that the relationship before us is a creature of state law ... demonstrates that it is not a protected liberty interest, but an interest limited by the very laws which create it.

*Drummond,* 563 F.2d at 1207. In this connection, it is significant that the DSHS has authority to deny or revoke a foster parent's license. Wash.Rev.Code § 74.15.-130.

The relationship between this foster parent and foster child is a creature of the Washington child welfare statutes. Those statutes confer no new due process rights, and they confer no new constitutional rights to religious exercise.

We do not hold that Section 1983 plaintiffs must always find a case on point in their favor to show that their rights were clearly established. Certainly they need not always produce binding precedent. *Capoeman v. Reed,* 754 F.2d 1512, 1514–15 (9th Cir.1985). There may be cases of conduct so egregious that any reasonable person would have recognized a constitutional violation. The Backlunds have failed to show that this was such a case.[5] Indeed, they have failed to show a violation of any constitutional right, clearly established or not.

The judgment of the district court is AFFIRMED.

---

**5.** The Backlunds argued at one point that the DSHS violated its own policy when it forbade all corporal punishment. This, if true, is irrelevant. Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory

---

or administrative provision. *Davis v. Scherer,* 104 S.Ct. at 3020.