**JABEND, INC., a Washington corporation, debtor, by Sheena AEBIG, its trustee; C.P. Grosenick, Jr., and C.P. Grosenick, Inc., a Washington corporation, Plaintiffs,**

v.

**FOUR–PHASE SYSTEMS, INC., a Delaware corporation, Defendant.**

No. C83–595D.

United States District Court,
W.D. Washington,
Seattle Division.

April 1, 1986.

---

John H. Strasburger, of Short & Cressman, First Interstate Center, Seattle, Wash., for plaintiffs.

James R. Hermsen, of Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Seattle, Wash., for defendant.

## MEMORANDUM AND ORDER

DIMMICK, District Judge.

This case primarily concerns the extent of liability pursuant to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.-

10b–5, of a defendant who is not the actual seller of a security.

The Court has before it: (1) plaintiffs' motion for reconsideration of their federal and Washington securities claims and their claim for punitive damages; and (2) defendant's motion for reconsideration of the Court's denial of summary judgment on plaintiffs' California securities [1] and Seller Assisted Marketing Plans Act ("CSAMPA") claims.

Having considered the memoranda, affidavits and supporting documents submitted by counsel, the Court rules as follows: plaintiffs' motion for reconsideration of their federal "common stock" securities claim is granted, but the result is unchanged; defendant's motion for reconsideration of its summary judgment motion on plaintiffs' California securities is granted, and the Court dismisses the California securities claim. The Court declines to reconsider the remaining issues.

## I.

### FACTS

Plaintiff C.P. Grosenick is president and sole stockholder of plaintiff Grosenick, Inc., a Washington insurance brokerage (hereinafter collectively referred to as "Grosenick"). In the late 1970's, Grosenick attempted to computerize his insurance business. After preliminary trials with existing computer systems, Grosenick contacted a computer expert, Jacqueline Bender, and began to explore the possibility of developing a computer system particularly suitable for his insurance business. At Bender's suggestion, Grosenick contacted defendant Four-Phase Systems, Inc. ("Four-Phase"), a California-based computer hardware manufacturer. Grosenick met with Four-Phase officials in California in 1978. By that time his original idea had blossomed into a scheme to develop and market a computer hardware/software package throughout the insurance brokerage industry.

With Four-Phase's assurances that its computer hardware was well-suited to the software application Grosenick envisioned, Grosenick and Bender formed Jabend, Inc. ("Jabend") to develop and market the package. The computer package was completed after several years of development. However, the time necessary for each computer terminal in the system to retrieve information and perform other functions proved too long to make the system commercially viable.

Jabend eventually filed for bankruptcy. Subsequently, plaintiffs filed suit, alleging that Jabend's failure, and Grosenick's resulting losses, were the direct result of Four-Phase's fraudulent assurances that its equipment was suited to the contemplated application. Although Jabend was originally involved in this suit, its bankruptcy trustee has since settled Jabend's claims against Four-Phase.

Following the Court's September 30, 1985 Summary Judgment Order, Grosenick's remaining claims consist of (1) misrepresentation and breach of warranty; (2) violations of the Washington Consumer Protection Act, RCW 19.86 (1983); (3) violations of the California Seller Assisted Marketing Plans Act, Cal.Civ.Code § 1812.200 (West 1977); and (4) violations of the California Corporate Securities Law, Cal.Corp. Code § 25401 (West 1977).

## II.

### PLAINTIFFS' MOTION FOR RECONSIDERATION

Initially, the Court declines to reconsider its dismissal of Grosenick's punitive damage claim and his claim under Washington securities law. The Court also will not reconsider the federal "investment contract" securities claims. Grosenick has presented no new arguments on these issues, and the relevant law remains unchanged. *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir.1985).

The Court will, however, reconsider its dismissal of Grosenick's federal "common

---

**1.** The Court did not rule on plaintiffs' California securities claim because the parties failed to brief the issue adequately. The Court therefore recognizes defendant's motion for reconsideration as a renewal of its summary judgment motion on this issue.

stock" securities claim in light of the United States Supreme Court's recent decision in *Landreth Timber Co. v. Landreth,* — U.S. ——, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985).

In its summary judgment order dismissing Grosenick's federal securities claims, the Court reasoned that, because Grosenick had legally controlled Jabend Corporation, neither the common stock, nor the investment contract was a security under section 3(a)(10) of the 1934 Securities Exchange Act, 15 U.S.C. § 78c(a)(10).[2] The Summary Judgment Order relied upon *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946) (an investment contract requires that a person invest in a common enterprise expecting profits solely from efforts of a third party); *United States Housing Foundation, Inc. v. Foreman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) (extending the *Howey* test to all interests defined as securities in section 3(a)(10), including common stock); and *Landreth Timber Co. v. Landreth,* 731 F.2d 1348, 1351 (9th Cir.1984) (applying *Howey* test to sale of common stock), *reversed,* — U.S. ——, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985).

In *Landreth,* the Supreme Court clarified its ruling in *Foreman,* 421 U.S. at 837, 95 S.Ct. at 2053, and held that the *Howey* test of what constitutes a "security" does not apply to the sale of common stock. The Court reasoned:

> When an instrument is labeled "stock" and possesses all of the traditional characteristics of stock, a court is not required to look to the economic substance of the transaction to determine whether the stock is a "security" within the meaning of the [Securities] Acts.

*Landreth,* 105 S.Ct. at 2303–06.

■ After *Landreth,* an investment in common stock is presumptively an investment in a security. Thus, when faced with a claim involving an investment in common stock, a court should bypass the *Howey* "economic reality" test, and begin its analysis under the Securities Acts.

■ Under *Landreth,* then, Grosenick's legal control of Jabend is no longer dispositive of his common stock claims. Therefore, this Court will reconsider its summary judgment on the issue of whether Four-Phase made misrepresentations in connection with Jabend's sale of common stock to Grosenick.

### ANALYSIS

Four-Phase argues that Grosenick cannot state a claim under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5; or section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) because (1) he cannot meet the "in connection with" requirement, (2) he cannot show reliance on Four-Phase's statements, and (3) he cannot demonstrate injury. Questions of reliance and injury involve factual matters inappropriate for summary judgment. However, the Court finds that Grosenick's common stock claim must be dismissed because the alleged misrepresentations were not made in connection with Jabend's sale of common stock to Grosenick.

■ To state a claim under Rule 10b–5, Grosenick must have purchased the Jabend common stock in connection with Four-Phase's allegedly fraudulent acts. *Blue Chip Stamps v. Manor Drug Store,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The broadest interpretation of this phrase is found in *Superintendent of Life Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) (Douglas, J.), where the Court declared that, in order to invoke the protection of Rule 10b–5, a party must be defrauded "as a result of deceptive practices *touching* its sale [or purchase] of securities...." (Emphasis supplied.)

---

**2.** Section 3(a)(10) of the 1934 Securities Act, 15 U.S.C. § 78c(a)(10) defines a security as:

Any note, stock, bond, debenture, certificate of interest or participation in any profit shar-

ing agreement ..., investment contract ... or in general, any investment commonly known as a "security"....

■ Although apparently broad, the "touch" language in *Bankers Life* does not support Grosenick's claims that Four-Phase's alleged misrepresentations in the sale of computer equipment were in connection with the purchase or sale of Jabend common stock. The Supreme Court has not yet decided whether misrepresentations involved in a securities transaction, but not pertaining to the securities themselves can form the basis for a securities violation. *Rubin v. United States,* 449 U.S. 424, 429 n. 6, 101 S.Ct. 698, 701 n. 6, 66 L.Ed.2d 633 (1981). The Second Circuit Court of Appeals has held that such a misrepresentation does not form the basis for a section 10(b) or 10b–5 violation. *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 (2d Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 253, 83 L.Ed.2d 190 (1985). In *Chemical Bank,* the court found that Justice Douglas' "touching the sale" language in *Bankers Life* was merely a variation of the "in connection with" language of Rule 10b–5 as a matter of literary style. *Chemical Bank,* 726 F.2d at 942, *quoting* Loss, *Fundamentals of Securities Regulation* 903 (1983). The court noted that Justice Douglas had already established that a securities violation had occurred long before using the "touch" language. *Id.*

Nonetheless, Grosenick claims that the Ninth Circuit has applied the "touch" test to find a stockbroker liable for fraud in connection with the sale of securities where the broker merely misrepresented the risks of margin financing. *See Arrington v. Merrill Lynch,* 651 F.2d 615 (9th Cir.1981). However, in *Arrington,* the broker also misrepresented Merrill Lynch analysts' recommendations as to the specific stocks being purchased. *Id.* at 619. In fact, although the court mentioned the *Bankers Life* "touch" test, it found that the broker's misrepresentations of the analysts' recommendations were *"directly* 'connected with' the sale of securities." *Id.* (Emphasis supplied.) The court concluded that both misrepresentations amounted to a scheme by the broker to induce the plaintiffs to borrow money from Merrill Lynch to engage in commission-producing securities

purchases through Merrill Lynch. *Id.* at 619.

Grosenick's reliance on *Arrington* is faulty. There was no direct connection between Four-Phase's alleged misrepresentations and Grosenick's purchase of Jabend's stock. Even assuming that Four-Phase meant to defraud Jabend in the sale of its computers, Grosenick has not shown that such fraud was part of an overall scheme to defraud purchasers of Jabend stock like that found by the court in *Arrington.* Unlike the broker in *Arrington,* Four-Phase had nothing to gain from Jabend's sale of common stock.

Grosenick also relies upon *Crofoot v. Sperry Rand Corp.,* 408 F.Supp. 1154 (E.D.Cal.1976). In *Crofoot,* defendant Sperry Rand submitted a proposal to a grocery delivery corporation warranting that it could produce a computer system for the corporation's telephone-order marketing plan. After the corporation failed, purchasers of its stock sued Sperry for 10b–5 violations. Plaintiffs alleged that Sperry knew that the corporation's success depended on Sperry's computer system, and that Sperry's compensation would come from the sale of the corporation's stock. Plaintiffs argued that the fraudulent information supplied by Sperry regarding its computer system was thus "reasonably calculated to influence the investing public." *Id.* at 1155. The court found that plaintiffs had stated a section 10(b) claim. *Id.* at 1159.

Despite its tantalizing factual similarities, *Crofoot* also does not support Grosenick's claim. In *Crofoot,* the court reasoned that a scheme to defraud the stock purchasers existed. Sperry had misrepresented its ability to produce computer equipment so as to induce investors to purchase stock and provide Sperry with a profit. *Id.* at 1158. In the present case, Four-Phase's profits came from its sale of computer hardware to Jabend, not from Jabend's sale of stock. If Four-Phase misrepresented the compatibility of its hardware to Jabend's software, the misrepresentation was

made in connection with the sale of computers, not common stock.

Moreover, unlike Sperry's misrepresentations in *Crofoot*, any misrepresentations made by Four-Phase were not reasonably calculated to influence the investing public. Sperry's information was directed to the stock purchasers, not to the corporation. Four-Phase's information, on the other hand, was directed to Grosenick before he formed Jabend, and before any stock was issued. Any later information was directed to Grosenick as president of Jabend, not as a member of the investing public. Even though he invested in Jabend stock, Grosenick's actions alone do not make Four-Phase's actions reasonably calculated to influence the investing public. *Cf. Wessel v. Buhler*, 437 F.2d 279, 282 (9th Cir.1971) (CPA's false financial statements not reasonably calculated to influence the investing public when he did not expect the reports to be relied upon by anyone other than the members of the entity for which the reports were prepared); *Landy v. FDIC*, 486 F.2d 139 (3d Cir.1973) (CPA not liable where financial reports delivered to directors for use not connected with stock issuance), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

Therefore, Four-Phase's information as to its computer's suitability for Jabend's needs was not reasonably calculated to influence the investing public, and was not part of a scheme to defraud any investor. The *Bankers Life* "touch" test does not turn Four-Phase's alleged misrepresentations in the sale of computers into misrepresentations in connection with Jabend's sale of stock.

### III.

### DEFENDANTS' MOTION FOR RECONSIDERATION

In its previous Order, this Court concluded that factual questions precluded summary judgment on Grosenick's CSAMPA claim. Four-Phase has presented no new arguments, and the relevant law remains unchanged. Therefore, the Court will not reconsider this issue. *See Backlund v. Barnhart*, 778 F.2d at 1388.

The Court has not ruled previously, however, on Grosenick's California securities claims. Because both parties have now briefed the Court on this issue, the Court will consider Four-Phase's renewed motion for summary judgment.

### ANALYSIS

As he did in his claims under federal and Washington securities law, Grosenick alleges that Four-Phase violated California securities law by making misrepresentations in the sale of: (1) Jabend, Inc. common stock, and (2) an investment contract formed by the agreement between Grosenick and Four-Phase to market a computer system.

### A. The Common Stock Claim

The California Corporate Securities Law provides that:

> It is unlawful for any person to offer or sell a security in this state or to buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

Cal.Corp.Law § 25401 (West 1977).

An important distinction between federal and California securities law is that a violation of the California law requires "the sale of or offer to sell" a security in California, while federal law requires only fraud "in connection with" the sale or purchase of a security. *Cf.* Securities Act of 1934 § 10(b), 15 U.S.C. § 78j(b); and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5.

This Court previously found that "plaintiffs have failed to establish that Four-Phase offered or sold any of Jabend's stock." Summary Judgment Order at 10. The stock at issue in the present case was sold by Jabend, Inc. a Washington corporation, to Grosenick, a Washington resident. No sale, offer to sell, or offer to buy Jabend stock occurred in California, and no

evidence of delivery of Jabend stock in California has been presented.

## B. The Investment Contract Claim

 California state law defines an investment contract in the same manner as federal securities law: a "contract or transaction whereby a person invests in a common enterprise with the expectation of deriving a profit solely from the efforts of a promotor or a third person." *People v. Coster,* 151 Cal.App.3d 1188, 1193–94, 199 Cal.Rptr. 253, 256 (1984), *citing United Housing Foundation v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *see also People v. Syde,* 37 Cal.2d 765, 768, 235 P.2d 601 (1951). Thus, a court's analysis of whether an investment contract exists under federal securities law would apply to a similar analysis under California securities law.

In the present case, this Court has already dismissed Grosenick's federal investment contract securities claim, finding that "[t]he unrefuted facts of this case are that Grosenick was legally in control of Jabend, and that he did not invest in Jabend to obtain profits from the managerial efforts of others." Summary Judgment Order at 9. The Court finds no genuine issue of fact as to this issue and therefore dismisses Grosenick's California investment contract securities claims as well. *See International Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir. 1985).

## IV.

### CONCLUSION

THEREFORE, plaintiffs' motion for reconsideration is GRANTED IN PART: the Court has reconsidered plaintiff's federal common stock securities claim brought under 15 U.S.C. §§ 78j(b) and 77q(a), and finds that the claim was properly dismissed. Defendant's motion for reconsideration is likewise GRANTED IN PART: after considering defendant's renewed motion for summary judgment on plaintiffs' claim under the California Corporate Securities Law, Cal.Corp.Code § 25401 (West 1977), the Court finds that this claim

should be DISMISSED. As to the remaining issues, both parties' motions are DENIED.

The Clerk of the Court is instructed to send copies of this Order to all counsel of record.