851 F.Supp. 1469 (1993)
SURE-SAFE INDUSTRIES, INC., Intertrack Management, Inc., Plaintiffs,
v.
C & R PIER MFG., Richard Clifton, and Chuck Giles, Defendants.
Civ. No. 92-1050-E(LSP).
United States District Court, S.D. California.
August 6, 1993.
*1470 *1471 Jerome Norris, Antonelli, Terry, Stout & Kraus, Washington, DC, and J.S. Kopelowitz, Branscomb & Kopelowitz, San Diego, CA, for plaintiffs.
Jeffrey G. Sheldon and Howard L. Hoffenberg, Sheldon & Mak, Pasadena, CA, for defendants.

MEMORANDUM DECISION AND ORDER
ENRIGHT, District Judge.
This is an action for infringement for U.S. Patent No. 4,937,989 (the '989 patent) claiming a mobile home support that elevates and ties together "trailer-like" sections of mobile homes. The suit is brought by plaintiffs Sure Safe Industries, Inc. ("Sure Safe") and Intertrack Management, Inc. ("Intertrack") against defendants C & R Pier Mfg. ("C & R"), its president Richard Clifton and a former shareholder of C & R Pier, Chuck Giles.
The '989 patent claims a combination of three assemblies: 1) a pair of piers; 2) a two-part clamp to engage an I-beam; and 3) a tie-rod assembly for connecting piers (the marriage lock). The '989 patent does not contain claims for any single subassembly by itself. Only a product comprised of all three subassemblies arranged as set out in the claims infringes.
In April 1993, after viewing the accused product, this court granted summary judgment in favor of defendants. It found that C & R Pier's product did not infringe the '989 patent because the accused device did not embody the elements of the claimed invention. Specifically, the court found that there was no credible evidence that the C & R piers and tie-rods could be or had been engaged as specified by the claims in the '989 patent, or that defendants' product could form all the sub-assemblies required by the '989 patent. Based on these missing elements and others, the court found there was not the necessary correspondence between the elements in the claimed invention and the accused device.

I. Plaintiffs' Motion for Reconsideration

Plaintiffs move for reconsideration of the court's decision to grant summary judgment in favor of defendants on the infringement issue.
In order to have the motion reconsidered, plaintiffs must meet the standard for reconsideration under Local Rule 7.1 i(1), which requires the existence of new facts or circumstances, which did not exist, or were not shown upon prior application. A motion for reconsideration is properly denied if it presents no arguments that had not been raised in opposition to summary judgment. Backlund v. Barnhart, 778 F.2d 1386 (9th Cir.1985).
Plaintiffs argue that reconsideration is appropriate because the court erred by concluding that the C & R products do not infringe the plaintiffs' patent.
First, they argue that this court failed to appreciate that a C & R product trademarked "Lock-Tops" has the capability of connecting together a tie-rod assembly (marriage lock) with a pier. Plaintiffs support this argument by: 1) Exhibit LT which shows a Lock-Top comprised of a two-part clamp with a depending stud; 2) Exhibit 12C which are C & R sales invoices showing the sale of marriage locks along with marriage lock heads and; 3) Exhibit RC which is deposition testimony by Richard Clifton that C & R Pier builds Lock-Tops as a component part of several products, including the Marriage lock and an earthquake-resistance brace.
However, plaintiffs do not support their argument with any direct evidence of photographs or testimony showing or describing a Lock-Top being used to connect the pier and tie-rod assembly together as required for infringement. Rather, they appear to rely on the speculations of counsel that the Lock-Top can be used with both the C & R pier and tie-rod assembly. The court did consider that circumstantial evidence can be used to prove direct infringement, but it did not find any circumstantial evidence which did so.
*1472 Second, plaintiffs argue that the court did not consider that infringement may occur even if the product has no direct instructions on assemblage or installment, if assemblage of the sold product in an infringing manner is obvious to the customers. However, this court does not have the power to render advisory opinions. See Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). The fact remains that plaintiffs have produced no evidence that anyone has assembled the C & R parts in an infringing manner.
Third, plaintiffs argue that the court erroneously concluded that the elements in claims 1-4 require a physical connection between the piers and the tie-rod. Rather, plaintiffs argue that the '989 patent in suit requires that the tie-rod assembly be secured to each of the I-beams by engaging the two-part clamp with each of the threaded rods of the tie-rod assembly.
Plaintiffs contend that infringement is established by the C & R tie-rod assembly (marriage lock) being secured to a clamp, which is secured by an I-beam; which is secured to another clamp, which is secured to a pier. Plaintiffs argue that it showed a photo of the C & R Marriage Lock indirectly connected to a C & R pier through the medium of an I-beam to this court which satisfied the "engaging" language of the patent in suit.
However, plaintiffs' argument is contrary to the testimony of Chong (the inventor in this suit) and Logan (plaintiffs' patent attorney), who testified that engagement literally means physical connection between the tied rod assembly and the piers. The inventors of the patent-in-suit contemplated that the word "engaged" means direct connection. Plaintiffs presented no evidence of a direct connection between the tie-rod and pier of C & R products to this court. The photo to which defendants refer showed the C & R product at a trade exhibit and did not show the tie-rod and pier engaged in a manner as required by the patent in suit.
Furthermore, even if defendants were right, and there is engagement to the tie-rods, there is still no infringement because several other elements of the claims are missing. These include the requisite tie-rod assemblies and threaded rods. The absence of a single element is sufficient to defeat infringement. See Builder's Concrete, Inc. v. Bremerton Concrete Products Co., 757 F.2d 255, 257 (Fed.Cir.1985).
Fourth, plaintiffs argue that the Hendershot deposition should have been given more weight by this court. Hendershot declared that the missing elements in defendants' products are nothing more than structurally or mechanically equivalent connecting means and, therefore, the doctrine of equivalence applies.
Upon reconsideration, this court finds that the Hendershot declaration was properly questioned by the court because: 1) it uses conclusory terms; 2) Hendershot was unqualified as a patent law expert and a mobile home support expert; and 3) Hendershot recently admitted that his statements regarding the engagement between the C & R pier and tie-rod were misleading and false.
Infringement does not exist under the doctrine of equivalents because defendants' products do not function in the same way as plaintiffs' products. Plaintiffs' pier and tie-rod fit together by means of a stud and socket. In contrast, the C & R pier and tie-rod cannot be physically engaged. C & R separately sells a pier with its patented clamp and separately sells a tie-rod. There is no evidence that C & R or its customers have ever engaged these products. However, defendants have submitted evidence that it is impossible to engage the C & R pier and tie-rod (marriage lock) without structural modification.
Furthermore, the doctrine of prosecution estoppel bars the application of the doctrine of equivalents in this case because plaintiffs' abandoned claim 6 in the patent office in light of a prior art rejection. Under the doctrine of equivalents, plaintiffs cannot obtain coverage which they could not lawfully have obtained from the Patent Office by literal claims. Wilson Sporting Goods Co. v. David Geoffrey & Assoc., 904 F.2d 677, 684 (Fed.Cir.1990). Claim 6, which was abandoned by plaintiffs did not have several of the limitations contained in claims 1 and 4. According to Logan, in order to have a patentable device, Logan had to retain the "adjustably threaded rods" and the "alignment" *1473 limitations in claim 1. He was not able to remove several limitations from claim 4 including the "cylindrical collar containing an intermediately situated threaded aperture," the "adjustably threaded rods," and the "tie-rod being connected at the threaded aperture." Therefore, under the doctrine of prosecution history estoppel, plaintiffs are now estopped from trying to claim broader coverage under the '989 patent than they originally could obtain through the patent office.
Fifth, plaintiffs argue that the Flickinger testimony should not have been accorded any weight because it was taken out of context. Flickinger's deposition indicated that plaintiffs unsuccessfully attempted to structurally modify a C & R product in a manner not traditionally used in the mobile home industry. This court did not take the Flickinger testimony out of context. Rather, it merely read the provisions of it submitted by defendants after plaintiffs cited a small portion of the Flickinger testimony to this court. If anyone took the testimony out of context, it was plaintiffs.
Finally, plaintiffs argue that the Logan expert witness deposition testimony is lacking in testamentary capacity because Logan was under suspension as a patent attorney at this time. However, as the court notes, infra, it does not find that Logan's suspension impacts his ability to render an expert opinion in the area of patent law. The fact that Logan was disciplined by the bar for unethical behavior does not render his testimony inadmissible.
Thus, defendants argue that plaintiffs' motion should be denied because it presents no new facts or circumstances, other than the issue concerning Logan's capacity to testify. All the evidence before the court now was before the court on the original motion.
Defendants additionally request that sanctions be imposed against plaintiffs for filing a frivolous motion for reconsideration which was not based on new evidence or information. They note that plaintiffs have already been sanctioned three times by the Magistrate Judge for failure to produce discovery and for bringing a frivolous motion to compel discovery.

CONCLUSION
The motion to reconsider is denied. Plaintiffs have presented no new information or evidence which convinces this court that its ruling was incorrect.
Defendants are not liable for infringement because they are merely selling minor variations of products identical to those sold before the filing of plaintiffs' '989 patent. C & R has been selling piers and tie-rods since 1971. In 1988, they began selling the two-part clamp as part of several products. However, unlike the mobile home support claimed in plaintiffs' '989 patent, C & R Piers' sub-assemblies cannot be combined into one unit. The C & R clamp may be provided with a pier or a tie-rod, but not both. The C & R pier and tie-rod have no means for directly engaging each other. Thus, though C & R Pier sells similar subassemblies to the Sure Safe products, it is not liable for infringement of the '989 patent because it does not produce a product comprised of all three sub-assemblies as set out in the '989 patent.
Defendants' motion for sanctions is also denied. Though the court does not find plaintiffs' arguments persuasive, it does not find that their motion was so meritless that it warrants the imposition of sanctions.

II. Plaintiffs' Motion to Strike Testimony of Charles Logan and to Withdraw and Replace Logan As Their Expert

Plaintiffs learned in May that their expert on patent infringement, Logan, had been found guilty of engaging in dishonesty, fraud, deceit and misrepresentation by an Administrative Law Judge in a disciplinary proceeding before the Patent and Trademark Office. Logan filed a complaint for judicial review of the Commissioner of Patents' decision, which stayed his suspension. However, Logan was suspended from the bar when he was deposed by defendants in March and will be suspended again once the stay is lifted.
Plaintiffs argue that because he is suspended from practicing, Logan is not qualified to be their expert. They assert that in order to be qualified under Fed.R.Evid. 702, an expert must be a member of the bar. They argue that since Logan is suspended, he does not have testamentary capacity to testify about the legal effect of patents. *1474 Plaintiffs rely on Fed.R.Civ.P. 26(f) and 60(b) to seek relief from this court as a result of the "surprise" they experienced when they learned Logan had undergone disciplinary proceedings.
In opposition, defendants argue that plaintiffs fall short of what is required by Fed. R.Civ.P. 26(f) and 60(b) for obtaining relief. First, defendants argue that plaintiffs did not actively seek information about Logan's background which would have revealed the fact that he was involved in disciplinary proceedings. Second, they argue there is no prejudice to plaintiffs since defendants have stipulated not to introduce, comment or suggest to the jury the disciplinary charges against Logan.
Defendants note that plaintiffs have relied on no case law for their argument. They argue that plaintiffs' real motivation for wanting Logan replaced is his damaging deposition. In his deposition, he provided several opinions which are favorable towards defendants. The opinions were brought to the attention of this court in the context of the summary judgment motion. Logan confirmed that essential elements of the claims were missing from the C & R product and testified that C & R did not infringe the patent in suit.
Defendants argue that this court may not strike Logan's testimony because Logan is plaintiffs' agent and his testimony is binding on them pursuant to Fed.R.Civ.P. 32(a)(2). Fed.R.Civ.P. 32(a)(2) states that the testimony of a Rule 30(b)(6) designated agent is admissible against that party for all purposes. Furthermore, Logan is plaintiffs' agent on patent law issues, and his testimony is admissible as the admission of a party-opponent pursuant to Fed.R.Evid. 801(d)(2)(D). Defendants cite legal support for the proposition that plaintiffs cannot simply suppress testimony of experts who testify in contravention to plaintiffs' theory of the case. See Collins v. Wayne Corp., 621 F.2d 777, 781-782 (5th Cir.1980).
Additionally, defendants argue that regardless of Logan's status as a designated expert by plaintiffs, he is a percipient witness of plaintiffs' anti-competitive mental state and plaintiffs' alleged willful bad faith in prosecuting the present claims. Logan provides percipient testimony that he informed plaintiffs of the invalidity of their patent infringement claims, and that plaintiffs intentionally proceeded with the claims knowing them to be a sham.
Finally, defendants argue that the mere fact that Logan has been charged with unethical conduct does not disqualify him from being an expert under Fed.R.Evid. 702. See Navarro de Cosme v. Hospital Pavia, 922 F.2d 926, 932-33 (1st Cir.1991) (the court qualified an expert notwithstanding his performance of several unethical acts). Id. Defendants argue that at most, Logan's alleged unethical behavior goes to his credibility and the weight of his testimony, not to admissibility. In any event, C & R Pier has agreed not to introduce into evidence the PTO disciplinary proceedings.
Defendants argue that they will be prejudiced if plaintiffs are allowed to replace their expert because of the additional delay and burden it will cause them.

CONCLUSION
This court denies plaintiffs' motion. The fact that Mr. Logan is suspended for alleged unethical acts does not disqualify him as a patent expert. His years of experience and the knowledge he gained as a patent attorney are not erased by the disciplinary proceedings. Though Logan is prevented from acting as an attorney during his suspension period, this does not preclude his testimony on a subject about which he has acquired expertise. He is not acting as an attorney when he testifies. Rather, he is acting as an expert witness in the field of patent law. Thus, this court agrees with defendants that the disciplinary proceedings raise a credibility, rather than an admissibility issue.
Moreover, plaintiffs are not prejudiced by the fact that Logan was the subject of disciplinary proceedings since defendants have agreed not to raise the issue in front of the jury.

III. Plaintiffs' Motion for Certification of Judgment Pursuant to Fed. R.Civ.P. 54(b) and for Postponement of Trial

Plaintiffs request the court to certify its order of non-infringement pursuant to Fed.R.Civ.P. 54(b) and enter final judgment in favor of defendants on plaintiffs' patent infringement cause of action. Fed.R.Civ.P. 54(b) gives the court discretion to direct the *1475 entry of a final judgment as to one or more of the claims upon the express determination that there is no just reason for delay.
Plaintiffs argue that an interlocutory appeal of the patent infringement claim would be proper because it is separate and distinct from the additional claims by plaintiffs and counterclaims by defendants. To prove their cause of action for infringement, plaintiffs must prove that one or more of the "claims" of their patent are being infringed by defendants' product. Plaintiffs' other two causes of action are for trademark infringement and false marking pursuant to 35 U.S.C. § 292. To prove trademark infringement, plaintiffs must show that there is a likelihood of confusion between plaintiffs' mark and defendants' mark. To prove false marking under 35 U.S.C. § 292, plaintiff must prove that defendants have, with an intent to deceive the public, used the word "patent" or some other work or number importing that the defendants' products are patented.
Defendants' counterclaim contains causes of action for antitrust; unenforceability; patent invalidity non-infringement; unfair competition under the Cal.Bus. & Professions Code; and cancellation of plaintiffs' trademark registration. Plaintiffs argue that since defendants' counterclaims do not require the same elements of proof as plaintiffs' infringement claim, they are also distinct and severable. Thus, plaintiffs argue there is no reason not to certify the judgment because all of the remaining claims in the action are distinct and separate.
Furthermore, plaintiffs argue that there is no just reason for delay of the appeal because the greatest efficiencies will occur by certifying the judgment and allowing the immediate appeal. They hypothesize that if the court disallows the immediate appeal, the end result will be two trials with overlapping evidence and issues. They argue that while the infringement claim is separate and distinct, it does overlap with the several other issues raised in this case. Thus, plaintiffs argue that Rule 54(b) certification and a stay of the lower court proceedings will avoid the inefficient result of two trials. They argue that the Court of Appeals for the Federal Circuit could provide a determination that would also expedite the trial on the remaining issue, which in part stem from related facts to the issue of patent infringement.
However, this court finds that plaintiffs have not met the standard necessary to justify an immediate appeal. The Federal Circuit, which will hear the appeal in this case, has held that plaintiffs must demonstrate a "serious, perhaps irreparable consequence flowing from the partial summary judgment and the denial of a Rule 54(b) motion." Chaparral Communications, Inc. v. Boman Industries, Inc., 798 F.2d 456, 459 (Fed.Cir. 1986). Both the U.S. Supreme Court and the Ninth Circuit have found that interlocutory appeals should be granted only to avoid serious consequences. Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981); Morrison-Knudsen Co. v. J.D. Archer, 655 F.2d 962, 965 (9th Cir.1981).
Plaintiffs have failed to demonstrate any immediate hardship or injustice to justify a Rule 54(b) certification. Plaintiffs' request seeks to advance the convenience of the plaintiffs and their counsel and to avoid the remote possibility of a second trial. This is not sufficient urgency to justify a Rule 54(b) certification.
Furthermore, plaintiffs' request for a stay of the lower court proceedings in conjunction with their request for the Rule 54(b) certification, is inconsistent with plaintiffs' claim of irreparable harm. It seems that plaintiffs would move for an expedited trial, rather than a stay, if they really were suffering serious harm.
Plaintiffs' continuation with discovery on the infringement issue is inconsistent with plaintiffs' assertion that the patent infringement claim is distinct and severable. Specifically, in contrast to his assertions about the distinct nature of the infringement issues, plaintiffs' attorney apparently justified a recent, lengthy, deposition of defendants' patent expert on the grounds that the patent infringement issues are "intertwined" and "overlap" other issues in this case. Thus, this court finds that plaintiffs do not have the type of urgent need required to justify a Rule 54(b) certification.
This court disagrees that efficiencies will be gained by allowing an immediate appeal. In light of the proximity of trial, and the long delay in obtaining an appellate opinion, granting Rule 54(b) certification would not expedite the conclusion of this action. Rather, it would be more efficient to develop a full *1476 factual record and permit all the appeals to be taken at once.
Finally, this court does not believe that the motion for summary judgment on infringement was incorrectly decided. Therefore, permitting a piecemeal appeal would probably be a waste of time which could be as long as two years.
This court is aware of the overlap in the issues in this case and it recognizes the value of having a ruling from the appellate court on the infringement issue before trying this case. However, it finds defendants' position more persuasive. The delay of staying the trial to await a Rule 54(b) certification is likely to be substantial and potentially futile. Thus, this court finds that the court's limited resources will best be used by proceeding with this case to trial and establishing a factual record, so the Court of Appeals may hear all the appeals from this case at once.

CONCLUSION
Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby denies plaintiffs' motion for reconsideration, denies plaintiffs' motion to strike the deposition testimony of their expert witness, and denies plaintiffs' motion for certification of the judgment and for the postponement of trial.