Theodore B. WESSEL et al., Appellants,

v.

L. M. BUHLER and N. A. Jordan,
Appellees.

No. 23854.

United States Court of Appeals,
Ninth Circuit.

Jan. 22, 1971.

678 (3d Cir. 1950), with Brown v. Moore, 247 F.2d 711 (3d Cir.), cert. denied, 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957).

Adam M. Duncan (argued), Parker M. Nielson, Salt Lake City, Utah, James Annest, Burley, Idaho, for appellants.

W. F. Merrill (argued), of Merrill & Merrill, Pocatello, Idaho, L. M. Buhler, Pocatello, Idaho, L. M. Buhler, Salt Lake City, Utah, for appellees.

Before ELY, HUFSTEDLER, and TRASK, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Appellants, stockholders of Rocky Mountain Chemical Corporation ("RMC"), appeal from adverse portions of a judgment against L. M. Buhler, president of RMC, and from a judgment in favor of N. A. Jordan, an accountant, in their actions to recover damages for losses allegedly caused by the violations by Buhler and Jordan of Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5.[1]

Appellants initiated the action against Buhler, certain other officers and directors of RMC, and Jordan, on their own behalf and for some 4000 other stockholders who had purchased RMC's stock in reliance upon three prospectuses dated February 10, 1960, August 1, 1961, and March 11, 1963. Appellants' class

---

1. Rule 10b–5 provides:
"It shall be unlawful for any persons, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
(1) to employ any device, scheme, or article to defraud,
(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

action averments were stricken by the district court on motion of appellees and their codefendants. All of the defendants, other than Buhler and Jordan, settled with the appellants before trial. At the close of appellants' case in chief, the court granted Jordan's motion for a directed verdict. The cause proceeded to judgment against Buhler, who has not appealed. The jury returned separate verdicts as to each appellant, expressly finding liability to each and awarding damages to each, save for three appellants who were awarded zero damages. The court totaled the verdicts ($51,020), totaled the amounts each appellant had received in settlements ($47,000), subtracted the latter from the former, and awarded a lump sum judgment for the difference ($4,020). Prejudgment interest and attorneys' fees were disallowed.

Appellants contend that the court erred in directing the verdict for Jordan, in computing the damages awarded against Buhler, in denying prejudgment interest and attorneys' fees, and in dismissing their class action. We affirm in part and reverse in part.

Buhler and his associates organized RMC in 1959 to produce alcohol from potatoes. Shortly thereafter RMC began selling its common stock to the public. Most of the stock was sold to Idaho residents, but some portions of the later issues were sold to out-of-state purchasers. Appellants variously bought stock under the first, the second, or all of the prospectuses. The financial condition of RMC was precarious from the outset. By 1962 its condition was worse and by 1963 it was desperate. RMC was adjudicated bankrupt in June 1964.

*Jordan's Liability*

Jordan, an independent certified public accountant, was retained on three separate occasions to prepare financial statements for RMC. In February 1962, Buhler asked him to prepare a financial statement to accompany RMC's application for a surety bond.[2] Jordan examined the corporate records and found that they were seriously deficient. After he persuaded RMC to hire a bookkeeper, Jordan and the bookkeeper gathered enough financial data to permit Jordan to prepare an unaudited statement for the accounting period ending June 30, 1962. Jordan delivered the statement to RMC's Board, with a transmittal memorandum noting the dubious collectibility of the Spring Kist account receivable listed in the face amount of $272,000 and cautioning that physical assets were carried at the acquisition costs reflected in RMC's books without any independent appraisal or audit. The second statement, also unaudited, was a balance sheet prepared by Jordan in cooperation with RMC's bookkeeper in January 1963. The balance sheet was to accompany RMC's application to the Small Business Administration for a loan. The second statement picked up some of the asset figures from the 1962 statement, with various current adjustments. Cash on hand was shown at $345.72. An operating loss of $267,780.34 also appeared. The third statement was prepared in July 1963. That audited statement disclosed a net loss during the period January through July 1963 of $451,000 and an operating loss of $775,500.

Appellants have two theories to sustain their claims against Jordan: (1) Jordan's financial statements were in and of themselves misleading statements "in connection with the purchase or sale of any security," within the meaning of Rule 10b–5. (2) The misleading financial statements, as Jordan knew, or should have known, were used in preparing the prospectuses that, in turn, were used "in connection with the purchase or sale of any security."

For the purpose of discussing the first point we assume that all three financial statements were misleading. Despite that assumption, no liability under Rule 10b–5 could have been based on

---

2. The Internal Revenue Service required alcohol producers to post a surety bond.

those statements because there was no proof that the statements alone were statements "in connection with the purchase or sale of any security."

The quoted phrase has been broadly construed to effectuate Congress' intent to prevent corporate practices that are reasonably likely to mislead investors to their detriment. (*E. g.*, Heit v. Weitzen (2d Cir. 1968) 402 F.2d 909, cert. denied (1969) 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217; SEC v. Texas Gulf Sulphur Co. (2d Cir. 1968) 401 F.2d 833, cert. denied *sub nom.* Kline v. SEC (1969) 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756). But its reach is not boundless. As Judge Waterman explained in Texas Gulf Sulphur Co., *supra,* 401 F.2d at 862, "Rule 10b–5 is violated whenever assertions are made * * * in a manner reasonably calculated to influence the investing public, e. g., by means of the financial media, * * * if such assertions are false or misleading or are so incomplete as to mislead irrespective of whether the issuance of the release was motivated by corporate officials for ulterior purposes."

None of the three financial statements was made "in a manner reasonably calculated to influence the investing public." None was publicly disseminated in any way. There was no evidence that any investor ever saw the statements until after the litigation began. The evidence was that Jordan delivered them to the Board for uses unconnected with stock issuance, and, as far as the evidence discloses, no one before suit ever saw them, except the officers and directors of RMC and the agencies to which they were directed. We decline to stretch Rule 10b–5 to cover Jordan's financial statements. (*See* Fischer v. Kletz (S.D.N.Y.1967) 266 F.Supp. 180, 194–196; *cf.* Rusch Factors, Inc. v. Levin (D.R.I.1968) 284 F.Supp. 85, 90–93.)

■ We turn to appellants' alternative theory. It is evident that Jordan had nothing to do with the first two prospectuses because they were issued before he reached the RMC scene. It is also evident that his third financial statement had nothing to do with the third prospectus because the third prospectus was issued before he prepared the third statement. Appellants' efforts to fasten responsibility upon Jordan rest upon connecting his first two statements with the production of the third prospectus.

Appellants attempted to show that Jordan participated in the creation of the prospectus by pointing to the use in the prospectus of some of the figures that appeared in Jordan's financial statements and by asking that an inference be drawn therefrom that Jordan was responsible for their appearance in the prospectus. Of course, we can infer from the presence of those figures in both instruments that whoever drew the prospectus took those figures from the earlier financial statements. But the further inference does not follow that the person who copied parts of the financial statements was Jordan. That inference is particularly untenable because other key features of the prospectus had no counterpart in the financial statements. Thus, RMC's operating loss of $267,000, shown on the 1963 balance sheet, was completely omitted from the prospectus. Cash on hand was listed as $345.72 on the balance sheet, but on the prospectus the sum was raised to $10,-345.72. The evidence demonstrated that whoever wrote the prospectus picked out the figures he found attractive in the balance sheet, discarded those he did not like, and simply made up the rest. The result was fiction, but there was no proof that Jordan created it.

The direct evidence from both Jordan and Buhler was that Jordan had nothing to do with the production of the third prospectus. Of course, the jury could have disbelieved the denials, but disbelief does not become a substitute for affirmative evidence. As Judge L. Hand said in Dyer v. MacDougall (2d Cir. 1952) 201 F.2d 265, 269:

"[A]lthough * * * a party having the affirmative might succeed in

convincing a jury of the truth of his allegations in spite of the fact that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him."

Perhaps in recognition of their failure to prove any direct participation by Jordan in the production of the third prospectus, appellants argue that Jordan indirectly participated in the prospectus by aiding and abetting Buhler and the other officers and directors of RMC and that Jordan should thus be held liable as a principal for the commission of their wrong. The argument has two prongs. The first is that some of the figures that appeared in Jordan's financial statements and that reappeared in the prospectus were of themselves misleading; therefore, Jordan should be chargeable with liability for making those misleading statements in the prospectus. There was no evidence that the items appellants attack were not prepared in accordance with good accounting practice under the circumstances. But even if some inference might arise that those figures were misleading, as we have said, there was no evidence at all to prove that Jordan was in any way responsible for their appearance in the third prospectus.

■ The second prong is appellants' contention that Jordan owed a duty to prospective investors to disclose his knowledge of RMC's irregular financial conduct and of deficiencies in its financial records, and that his failure to perform that duty placed Buhler and his associates in a position to dupe the investors by launching stock with the third prospectus; therefore, Jordan aided and abetted Buhler and should be held as a principal. There is not a scrap of authority supporting this extraordinary theory of Rule 10b–5 liability, and we will not supply any in this case.

We find nothing in Rule 10b–5 that purports to impose liability on anyone whose conduct consists solely of inaction. On the contrary, the only subsection that has any reference to an omission, as distinguished from affirmative action, is subsection (2) providing that it is unlawful "to omit to state a material fact necessary in order to make the statements made * * * not misleading," *i. e.*, an omission occurring as part of an affirmative statement. (*See* Brennan v. Midwestern United Life Insurance Co. (7th Cir. 1969) 417 F.2d 147, 154–155.) We perceive no reason, consonant with the congressional purpose in enacting the Securities and Exchange Act of 1934, thus to expand Rule 10b–5 liability. (*Cf.* SEC v. Texas Gulf Sulphur Co., supra, 401 F.2d at 866–868 (J. Friendly, concurring specially).) On the contrary, the exposure of independent accountants and others to such vistas of liability, limited only by the ingenuity of investors and their counsel, would lead to serious mischief.

We conclude that the district court properly directed the verdict in Jordan's favor.

*Computation of Damages*

■ We turn to appellants' claim that the district court erred in computing allowable setoffs in reaching the judgment. Appellants agreed with the court's suggestion that the amounts of their settlements with the defendants who compromised before trial should be deducted from any award they received against the remaining defendants. At the request of the court and defense counsel, each appellant submitted a statement of the amount he had received by way of settlement. After the jury returned its separate verdict for each appellant, the court added all of the verdicts together totalling $51,020. From that total, the court deducted the total amounts received in settlement by all of the then plaintiffs, $47,000, and awarded a lump sum judgment against Buhler for the difference, $4,020. Despite appellants' objections, the court completely disregarded the facts that many of the then plaintiffs had settled for more than the jury had awarded them, that there was no uniform relationship between the

amount of the jury awards and the amount of the settlements, and that there was no connection at all between the amounts awarded to any plaintiff vis-a-vis any other plaintiff.

The error in the court's method of computing the set-offs and ultimately the judgment can be illustrated by a single example: Appellant Wessel had invested $30,000 in stock purchased in reliance on two of the prospectuses and $23,000 in reliance on the third prospectus. The jury awarded him $23,000. He had received by way of settlement $9,972.44. Deducting that offset, he should have received judgment for $13,-027.56, exclusive of interest and costs. But the district court did not award him that sum; it directed that he share somehow in the lump sum award of $4,-020 to all appellants.

 Appellants also contend that the court should have awarded them prejudgment interest. Whether interest will be awarded is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities. (Blau v. Lehman (1962) 368 U.S. 403, 414, 82 S.Ct. 451, 7 L.Ed.2d 403; Norte & Co. v. Huffines (2d Cir. 1969) 416 F.2d 1189, 1191–1192, cert. denied *sub nom.* Muscat v. Norte & Co. (1970) 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396; Hecht v. Harris, Upham & Co. (N.D.Cal.1968) 283 F.Supp. 417, 444; Ross v. Licht (S.D.N.Y.1967) 263 F.Supp. 395, 411–412.) Here, the district court denied appellants' motion for interest without any explanation. Due to the flagrant use of false statements in the March 1963 prospectus, for which Buhler was responsible, we cannot state that considerations of fairness would deny an award of prejudgment interest.

Appellants next contend that the court erred in denying them counsel fees. We see no error in denying them counsel fees in their individual actions against Buhler.

*Dismissal of Class Action*

Finally, appellants complain that the district court erred in striking their class action allegations from the complaint. Even should we agree with appellants that the ruling was erroneous, their victory would be Pyrrhic. They have settled with all of the original defendants, except Buhler and Jordan. Jordan has no liability. Each of the individual appellants has received judgment against Buhler. A companion case was filed and is still pending in Utah whereby 1400 other named plaintiffs are maintaining a class action against Buhler and others growing out of the same facts and seeking similar relief. Under these peculiar circumstances, no useful purpose would be served by remanding the class action phase of appellants' case for further proceedings.

The judgment in favor of Jordan is affirmed, and he shall have his costs on appeal. The judgment is reversed on the damages issues only, and the cause is remanded to the district court for further proceedings consistent with this opinion. Appellants shall bear their own costs on appeal.