Olga **HOCHFELDER** et al., Plaintiffs,

v.

**MIDWEST STOCK EXCHANGE** and **Ernst & Ernst**, Defendants.

**No. 71 C 454.**

United States District Court,
N. D. Illinois, E. D.

Oct. 3, 1972.

King, Robin Gale & Pillinger, Leon M. Despres and Albert Schwartz, Elson, Lassers & Wolff, Donald L. Vetter, Chicago, Ill., for plaintiffs.

Milton H. Cohen, Allan Horwich and Mitchell S. Rieger, Schiff, Hardin, Waite, Dorschel & Britton, Michael A. Coccia and Robert L. Berner, Jr., Chicago, Ill., for defendants.

### DECISION and ORDER

McMILLEN, District Judge.

This cause comes on to be heard on the motion of defendant Midwest Stock Exchange for summary judgment or, in the alternative, for partial summary judgment. We find and conclude that the motion of defendant Midwest Stock Exchange in this case should be granted.

Plaintiffs' amended complaint against Midwest is founded on Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and S.E.C. Rule 10b–5 thereunder (17 C.F.R. § 240.10b–5). Apparently as part of the 10b–5 violation plaintiffs also allege that this defendant violated Section 6(a)(1) of the Securities Exchange Act (15 U.S.C. § 78f). This section, in part, requires a national securities exchange to file an agreement with the S.E.C. "to enforce so far as is within its powers compliance by its members, with the provisions of this chapter, and any amendment thereto and any rule or regulation made or to be made thereunder." Presumably such an agreement was filed by Midwest.

The background facts of this case are fully set forth in two recent opinions of the Seventh Circuit Court of Appeals in Securities and Exchange Commission v. First Securities Company of Chicago,

463 F.2d 981, dated April 12, 1972 and 466 F.2d 1035, dated August 1, 1972. The liability of Nay and his brokerage firm has thereby been established. These decisions also control some of the defendant's defenses. There is therefore no need to further review the sordid details except insofar as they relate to plaintiffs' claim against Midwest.

The facts insofar as Midwest's defenses are concerned are contained in several affidavits filed with its motion demonstrating its relationship to Nay and First Securities. These facts are not controverted by counter-affidavits. The remaining question, therefore, is whether any genuine issues of material fact exists between the parties to this litigation. We believe there are none and that the only issues remaining to be decided are issues of law.

Insofar as any affirmative representation by Midwest is concerned, plaintiffs rely almost entirely on a certificate issued to Nay which was presumably displayed in his office and which stated:

---

MIDWEST STOCK EXCHANGE
Organized 1882

An Association for Brokers, Whose Object is to Establish and Conduct a Market for Listed Securities, where High Standards of Commercial Honor and Integrity are maintained and Just and Equitable Principles of Trade and Business prevail.

This certificate of Membership is Issued to

LESTON B. NAY

or

First Securities Company of Chicago

/s/ Carl E. Ogren      /s/ James E. Day

Secretary      President

(This Certificate is the Property of Midwest Stock Exchange).

---

■■ Since Nay's dishonesty did not involve the sale of "listed securities" to plaintiffs, this certificate is not evidence of any violation of Rule 10b–5. It does not apply to the sale or issuance by Nay of promissory notes in his personal escrow account, and plaintiffs do not allege any impropriety in the purchase or sale of listed securities. They would not have been justified in relying on this certificate when they turned over the proceeds of sales of securities to Nay personally, and affirmative representations under Rule 10b–5 are required to be in connection with the purchase or sale of the security in question. Cf. List v. Fashion Park Inc., 340 F.2d 457, 462–463 (2nd Cir. 1965), cert. den., 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965), Katz v. Amos Treat & Co., 411 F.2d 1046, 1953 (2nd Cir. 1969).

The remainder of plaintiffs' allegations against this defendant involve its alleged failure to investigate and supervise Nay's activities sufficiently to discover his fraud. No case has been cited where this type of omission or practice gives rise to an action against an exchange under Rule 10b–5. The only cited case resulted in summary judgment for the exchange. Butterman v. Walston & Co., Inc., et al., 387 F.2d 822 (7th Cir. 1967). As a matter of fact it is doubtful that the language of Section 6(a)(1) supports an action by a third party except possibly as a contract beneficiary.

The other cited cases involve representations or omissions made with respect to the issuance or sale of specific securities. There is no indication that Rule 10b–5 was intended to make a national security exchange responsible for all of the personal transactions and financial stability of its members. Cf. Buttrey v. Merrill Lynch et al., 410 F.2d 135 (7th Cir. 1969) for a typical case involving violations of a stock exchange rule by a broker.

■ Assuming, however, that Midwest could be liable for ineffectively policing its members' dealings in unlisted securities, the defendant's affidavits demonstrate that it adequately performed its agreement under Section 6(a)(1) of the Act. Although plaintiffs have shown instances where this defendant arguably was put on notice of Nay's untrustworthiness, these do not raise an

issue of fact concerning the adequacy of the defendant's supervision, but merely tend to show that it was not fluoroscopic. Neither the law nor common sense requires perfection but only an agreement "to enforce so far as is within its powers compliance by its members . . . ." (15 U.S.C. § 78f). Defendant's affidavits establish this without contradiction.

The words of the Court of Appeals in # 71–1422 involving a customer's claim against the broker are somewhat *apropos* to Midwest's position in this case:

> Nothing which occurred during the almost 25 years of Schueren's dealings with First Securities and Nay can be said to have put a reasonable person on notice that anything was amiss . . . . Even the trust department of the Union Bank was completely duped by Nay for more than a year after Schueren's death until Nay's suicide.

The court finds and concludes as a matter of law that Midwest performed its obligations under Section 6(a)(1) and that no triable issue of fact remains therein.

■ There is no longer any issue in this case that Nay violated Rule 10b–5 and committed fraud in the sale of "securities" (Case # 71–1422, Seventh Circuit, August 1, 1972). It must also be assumed that he violated one or more of defendant's rules and regulations. This does not constitute fraudulent conduct by the defendant exchange, as occurred in Carroll v. First National Bank of Lincolnwood, 413 F.2d 353 (7th Cir. 1969), cert. den. 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970). It also cannot be said from any of the facts or alleged facts in this case that defendant Midwest "aided and abetted" Nay in any actionable sense. Wessel v. Buhler, 437 F.2d 279 (9th Cir. 1971); see also Brennan v. Midwestern United Life Insurance Company, 417 F.2d 147, 154–155 (7th Cir. 1969), cert. den. 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970).

■ Defendant Midwest alternatively contends that the three-year statute of limitations had run by the time this case was filed on February 19, 1971. Plaintiffs contend that the statute was tolled by fraudulent concealment, but the facts do not support this theory either. To toll the statute, the defendant must have actively concealed the cause of action, and Midwest clearly was not shown to have done this. The law on this point was not shown to be different than it was in Morgan v. Koch, 419 F.2d 993 (7th Cir. 1969). Since none of the plaintiffs entrusted funds to Nay after 1966, their claims are barred.