974 F.2d 1341
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ronald P. BRADY, an individual; Robert W. Brady, an
individual; Karl R. Schlak, an individual; Terrain, Inc.,
a North Dakota corporation; Erling O. Schlak, an
individual; Gerner, Inc., a North Dakota corporation;
Henry Jessen, an individual; Evelyn Jessen, an individual;
Triple J Farms, a Wyoming corporation; Allen D. Larson, an
individual; Vincent Lombardo, an individual, Plaintiffs-Appellants,
v.
Bennett LITTLE, an individual; Bencal, Inc., a California
corporation; Harold O. Wright, an individual; Dairy Fresh
Products Co., a California corporation; Demler Farms, Inc.,
a California corporation, et al., Defendants-Appellees.
Ronald P. BRADY, Plaintiff-Appellee,
v.
Bennett LITTLE, an individual; et al., Defendants,
and
Harold O. WRIGHT, Defendant-Appellant,
Vito ASARO, an individual, Counter-claimant-Appellee,
v.
Bennett LITTLE, an individual; et al., Counter-defendants,
and
Harold O. WRIGHT, an individual, Counter-defendant-Appellant.
Ronald P. BRADY, an individual; Robert W. Brady, an
individual; Karl R. Schlak, an individual; Terrain, Inc.,
a North Dakota corporation; Erling O. Schlak, an
individual; Gerner, Inc., a North Dakota corporation;
Henry Jessen, an individual; Evelyn Jessen, an individual;
Triple J Farms, a Wyoming corporation; Allen D. Larson, an
individual; Vincent Lombardo, an individual, Plaintiffs-Appellants,
v.
Bennett LITTLE, an individual; Bencal, Inc., a California
corporation; Harold O. Wright, an individual; Dairy Fresh
Products Co., a California corporation; Demler Farms, Inc.,
a California corporation, et al., Defendants-Appellees.
 Nos. 90-55505, 90-55508 and 90-55510.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1992.
Decided Sept. 9, 1992.
 
 Before WALLACE, Chief Judge, and JAMES R. BROWNING and FERGUSON, Circuit Judges.
 
 MEMORANDUM
 
 1
 Ronald Brady, Vincent Lombardo, Allen Larson, Erling Schlak, Karl Schlak, Henry Jessen, Evelyn Jessen, Robert Brady, Gerner, Inc., Terrain, Inc., and Triple J Farms, Inc. (the investors) appeal the district court's judgment notwithstanding the verdict (judgment NOV) and a directed verdict on several issues. The investors also challenge the district court's order denying attorneys' fees and prejudgment interest. Wright cross-appeals contending that the district court erred by rejecting judgment NOV on several claims and awarding Asaro prejudgment interest and costs. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291. We affirm in part and reverse and remand in part.
 
 
 2
 * The investors contend that the district court erred by granting judgment NOV on the RICO counts brought by the Jessens, the Schlaks, Gerner, Inc., and Triple J Farms, Inc. (the Jessen investors). Judgment NOV is proper if, "without accounting for the credibility of the witnesses, [the court] finds that the evidence and its inferences, considered as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion--that the moving party is entitled to judgment notwithstanding the adverse verdict." The Jeanery, Inc. v. James Jeans, Inc., 849 F.2d 1148, 1151 (9th Cir.1988) (The Jeanery ).
 
 
 3
 In order to establish a violation of RICO, the Jessen investors are required to show that there were at least two predicate acts. See 18 U.S.C. § 1961(5). The district court's decision was based at least in part on the belief that two predicate acts had not been proven. The Jessen investors advanced misrepresentation claims against Wright in counts 12 and 13 that could support a finding of mail or wire fraud. See 18 U.S.C. §§ 1341, 1343, 1961(1). The district court, however, found that Wright made no misrepresentation relied on by the Jessen investors.
 
 
 4
 The Jessen investors argue that an individual can be held liable under RICO even if he or she made no misrepresentations. They argue that Wright is liable because he caused Little to make the misrepresentations and commit fraudulent acts. The Jessen investors, however, have not provided any support from the record for this proposition.
 
 
 5
 The investors also apparently contend that Wright's active participation in the transactions should cause him to be liable for the alleged fraudulent acts. However, as the district court pointed out, liability under RICO usually requires some showing of scienter. In this case, in order to establish that Wright violated the wire and mail fraud statutes as a principal or aider and abettor, there must be some showing of knowledge of the fraudulent scheme or at least recklessness. United States v. Olson, 925 F.2d 1170, 1176 (9th Cir.1991). In their opening brief, the investors provided numerous citations to the record indicating that Wright was involved in and benefited from the underlying transactions. This evidence is not sufficient to establish that Wright had knowledge of the fraudulent scheme or acted with reckless disregard for the truth.
 
 
 6
 At oral argument, however, the investors also argued that Wright was knowingly and intentionally involved because he was allegedly aware that the investments were failing and intentionally withheld this information from the Jessen investors. The investors, however, failed to present this argument clearly in their opening brief. Thus, this argument is waived, and we decline to address it. See International Union of Bricklayers & Allied Craftsmen Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985) (International Union ).
 
 
 7
 In their reply brief, the Jessen investors argue that the predicate acts and the pattern of racketeering can be found in Wright's actions in earlier schemes that are described in the other counts of the complaint. This argument was also not clearly raised in the opening brief and is therefore waived. Moreover, in order to recover civil damages under RICO, the investors must prove that the harm they suffered "was caused by these predicate acts of racketeering" that arose out of the earlier schemes. Reddy v. Litton Industries, 912 F.2d 291, 294 (9th Cir.1990), cert. denied, 112 S.Ct. 332 (1991). The Jessen investors have failed to demonstrate any injury from the earlier predicate acts that arose from other schemes. Therefore, we conclude that the district court did not err by granting judgment NOV on the RICO claim.
 
 
 8
 The investors also contend that the district court erred by granting Wright's motion for judgment NOV on the conspiracy count. Under California law, "the conspirators must agree to do some act which is classified as a 'civil wrong.' " Youst v. Longo, 43 Cal.3d 64, 79, 233 Cal.Rptr. 294, 729 P.2d 728 (1987) (internal quotations omitted). There is insufficient evidence to support the jury's determination that Wright entered into such an agreement concerning the relevant transactions. Moreover, contrary to the assertion of the investors, Wright adequately raised this contention in his motions for a directed verdict. Therefore, the district court did not err.
 
 
 9
 The investors also contend that the district judge erred by awarding a directed verdict to Wright. The standard for reviewing a directed verdict is the same as for judgment NOV. The Jeanery, 849 F.2d at 1151.
 
 
 10
 Larson argues that the district court erred in granting the motion for a directed verdict on Larson's claim for management and consulting fees. Larson contends that the fees were paid in order to obtain a legitimate tax shelter scheme while this scheme was clearly illegitimate. Larson, however, bargained for a scheme that would produce certain tax benefits, and he received tax benefits. The investors further argue that the district court erred because Wright failed to join in Little's motion. However, Wright sufficiently raised this issue in his own motions before the district court. Thus, we affirm the directed verdict.
 
 
 11
 Brady contends that the district court erred by reducing Brady's damages for management fees expended in the Campo II transaction by $15,000. Lombardo and Brady further argue that the district court erred by reducing their damages for the purchase of Campo II poultry houses by $18,000. These arguments are irrelevant because the jury found that Wright was liable to Brady and Lombardo solely on the conspiracy count. We need not address these contentions because we have affirmed the district judge's judgment NOV on the conspiracy count.
 
 
 12
 The investors also challenge the district court's denial of attorneys' fees for their successful RICO claims. Attorneys' fees awards are generally reviewed for an abuse of discretion. Hall v. Bolger, 768 F.2d 1148, 1150 (9th Cir.1985). "However, any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable de novo." Id.
 
 
 13
 Under RICO,
 
 
 14
 [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee.
 
 
 15
 18 U.S.C. § 1964(c) (emphasis added). The plain language of section 1964(c) indicates that successful RICO plaintiffs should be awarded attorneys' fees. Although the district court initially indicated that attorneys' fees may be awarded, the district court eventually declined to award any of the investors attorneys' fees. The district court's order denying attorneys' fees does not explain why fees were not awarded. Therefore, we cannot review the district court's decision, and a remand is necessary. See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1213 (9th Cir.1986), amended, 808 F.2d 1373 (9th Cir.1987).
 
 
 16
 The investors also argue that the district court erred by denying their request for prejudgment interest. Awards of prejudgment interest are generally reviewed for an abuse of descretion. Wessel v. Buhler, 437 F.2d 279, 284 (9th Cir.1971) (Wessel ). First, the investors contend that they were entitled to interest under Cal.Civ.Code § 3287(a) (West 1970). Under section 3287(a), a plaintiff is entitled to prejudgment interest if the damages are "certain, or capable of being made certain by calculation." Id. "Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages ... but where their dispute centers on the issue of liability giving rise to damage." Esgro Central, Inc. v. General Insurance Co. of America, 20 Cal.App.3d 1054, 1060, 98 Cal.Rptr. 153 (1971). The district judge's comments clearly indicate that he determined that Wright could not have calculated with any degree of certainty the amount of damages in this case. The scope and extent of damages were contested issues in the motions for summary judgment, directed verdict, and judgment NOV. The district court did not abuse its discretion.
 
 
 17
 The investors also apparently contend that the district court abused its discretion by not awarding prejudgment interest pursuant to Cal.Civ.Code § 3288 (West 1970). Section 3288 provides that "[i]n an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." The investors, however, have not shown that there was an abuse of discretion.
 
 
 18
 The investors also assert that prejudgment interest should be awarded under the federal securities laws. Under the federal securities laws, "[w]hether interest will be awarded is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." Wessel, 437 F.2d at 284. The district court explained that an interest award was not warranted because the amount of damages could not have been ascertained by Wright. The district court's comments concerning the need for a special master and the inability of the parties to agree on what the case is really about may also indicate that the district court believed that the delay in this case may at least in part be attributable to the investors or other forces outside Wright's control. In light of these two factors, we conclude that the district court did not abuse its discretion.
 
 
 19
 In their reply brief, the investors "assert that the district court abused its discretion in awarding prejudgment interest to Cross-Claimants Asaro and Feinstein, while refusing to award prejudgment interest to Appellants." This argument is waived because it was not clearly raised in the investors' opening brief.
 
 
 20
 Wright apparently argues that we cannot reverse the district court's decision in this appeal because the summary judgment order disposed of most of the transactions in this case. This argument is meritless.
 
 II
 
 21
 Wright cross-appeals asserting that the district court erred by failing to grant judgment NOV regarding Brady's Phoenix investment verdict. Wright asserts that he cannot be held liable under RICO because he did not commit two predicate acts. Wright argues that if he "were found liable by the jury for mail and wire fraud ... on both Counts five and ten, the two independent predicate acts required by the RICO Statute would have been satisfied." Wright concludes that because the jury did not find him liable in count ten, there was only one predicate act. The Supreme Court, however, has held that the two requisite predicate acts can be found within the same fraudulent scheme. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 236-37 (1989) (H.J. Inc.). The investors alleged in count five that there was a fraudulent scheme and that the mail and telephone were used on more than one occasion in furtherance of that scheme. Each separate use of the mail to further a scheme to defraud is a separate offense. United States v. Vaughn, 797 F.2d 1485, 1493 (9th Cir.1986). There is no requirement that the mailings be false. United States v. Benny, 786 F.2d 1410, 1420 (9th Cir.), cert. denied, 479 U.S. 1017 (1986). The investors have pointed to ample evidence that the mail was used at least twice to further the scheme described in count five. Wright has failed to show that this evidence is not adequate to support the existence of two predicate acts.
 
 
 22
 Wright also contends that he cannot be held liable because he allegedly never met Brady or talked to him prior to 1984. There was evidence that Brady was led to believe that he was receiving more property than he in fact received. The jury may have found that Wright caused others to give Brady this mistaken impression or that Wright acted as an aider and abetter. Wright has failed to establish that there is no evidence to support such findings.
 
 
 23
 Wright also contends that there is no pattern of racketeering because the investors allegedly failed to show that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc., 492 U.S. at 239. Wright argues that this standard was not met because there was only one predicate act involving a single scheme. As discussed above, Wright loses on this issue. Moreover, the Supreme Court has rejected the argument that there is no pattern of racketeering merely because there is only one scheme. Id. at 236-37. In this case, there were multiple predicate acts and multiple victims. Wright has failed to produce any valid argument why there was no threat of continued criminal conduct or a pattern of racketeering activity. Therefore, there is no error.
 
 
 24
 Wright also asserts that there was no RICO enterprise. This argument was not properly raised in Wright's motion for judgment NOV, and thus this issue is waived. See International Union, 752 F.2d at 1404. We affirm the denial of the motion for judgment NOV.
 
 
 25
 Wright also argues that the Phoenix investment verdicts cannot stand because there is no proof of damages. The investors contend that Wright did not raise this issue in the district court. However, Wright repeatedly asserted in his motions that the Phoenix verdicts may not stand because there was no proof of damages.
 
 
 26
 Wright argues that the jury's award of lost profits was not supported by the evidence. Wright contends that the damage awards may not be based on tax misrepresentations. However, there were also misrepresentations regarding the amount of property purchased. Brady charges that he was told that he was purchasing an undivided one-sixth interest in all of the land when in reality he was purchasing a one-sixth interest in only part of the land. Wright argues that it is difficult to believe that Brady thought he was purchasing an interest in all of the land in light of the evidence in the record. However, there is also evidence that Brady did believe he would receive an undivided one-sixth interest in all of the land. The jury was entitled to weigh the evidence and conclude that a misrepresentation was made and believed. The jury was also entitled to conclude that Brady would not have invested in the Phoenix transactions if he was not led to believe that he would receive an interest in all of the property. Thus, Wright should be responsible for all of the damages that flowed from this investment.
 
 
 27
 Wright further contends that there was no evidence as to the value of the property or any other measure of lost profits. The district court however specifically found that there was sufficient evidence, and the record supports its decision. There was no error.
 
 
 28
 Wright also argues that there was no evidence to support the award of management/consulting fees. It was reasonable for the jury to conclude that these fees were incurred at least in part to obtain advice and assistance in purchasing and operating a one-sixth interest in all of the land. Moreover, Brady would not have invested in this transaction and incurred these fees, if he was not led to believe that he was purchasing an interest in all of the property. The investors also presented sufficient evidence that these fees were paid. Wright, however, argues that he is not responsible for these consulting/management fees because they were paid to Bencal, Inc., a nonparty. Wright, however, waived this argument because he did not clearly and properly raise it in his motion for judgment NOV. Thus, the district court did not err.
 
 
 29
 Wright contends that there was no evidence to support the award of $2,000 in accounting fees. Brady responds by arguing that he testified concerning the audit. The portion of the record cited by Brady, however, does not support the conclusion that the jury was given any evidence of the amount of money expended on accounting fees. Brady has pointed us to no evidence that rebuts Wright's claim that the accounting fee award was based on mere speculation. Therefore, we reverse the district court's decision on this issue.
 
 
 30
 Wright also argues that the district court erred by failing to grant judgment NOV regarding Asaro's section 10(b) of the Securities Exchange Act of 1934 (section 10(b)) verdict. The jury awarded Asaro damages based on Wright's violation of section 10(b). Wright contends that he cannot be held liable under section 10(b) because he did not make any representations to Asaro or take any actions that were relied on by Asaro. However, an individual can be held liable for aiding and abetting a violation of section 10(b). See Harmsen v. Smith, 693 F.2d 932, 943 (9th Cir.1982), cert. denied, 464 U.S. 822 (1983). "The elements of a cause of action for aiding and abetting under section 10(b) are: (1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abetter of the wrong and of his or her role in furthering it; (3) substantial assistance in the wrong." Id.
 
 
 31
 There was adequate evidence to support the jury's verdict. First, there was evidence of primary wrongs committed by Little. Second, there was also adequate evidence that Wright was aware of the fraudulent scheme to withhold information and provided substantial assistance in that scheme. For example, Wright concedes that he was aware of the bird production problem by January 2, 1985. Wright was the president of Kennebec Breeders and executed a lease agreement between Asaro and Kennebec Breeders sometime between December 1, 1984, and the first few days of January 1985. Wright also executed an option to repurchase agreement between Asaro and Kennebec on or about January 11, 1985. However, when Wright executed these agreements he did not disclose the production problems or that the investments might be at risk. Wright answers by arguing that he notified Asaro of the problem by mailing him a notice of shareholder meeting that stated that one purpose of the meeting was to discuss "potential feed claims against Carnation." This notice, however, does not adequately warn Asaro that production had fallen or that his investment was at risk. Moreover, this notice is dated January 8, 1985, while Wright likely executed the lease agreement sometime prior to that date.
 
 
 32
 Wright also argues that Asaro's complaint does not conform to the specificity requirements for pleading a section 10(b) violation. This issue is waived because it was not raised in the motion for judgment NOV. Additionally, Wright raises several arguments for the first time in his reply brief. These arguments are also waived. Wright's other contentions are rejected as meritless. Thus, we affirm.
 
 
 33
 Wright also challenges the district court's decision to award prejudgment interest to Asaro. Asaro was awarded damages and prejudgment interest for the violation of section 10(b). Under the federal securities laws, "[w]hether interest will be awarded is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." Wessel, 437 F.2d at 284. Wright argues that prejudgment interest is inappropriate because Asaro's complaint indicates that Asaro is only seeking interest from the other individuals involved in the investment scheme. However, paragraph thirty-three of the complaint merely states that the refusal to return the funds invested resulted in a claim for damages and interest. The paragraph does not assert that only certain individuals may be liable for these damages and interest. Moreover, Asaro clearly requested that the district court award him interest on the section 10(b) claim against Wright. Wright has failed to cite any case law or facts which indicate that the district court abused its broad discretion. Therefore, we affirm.
 
 
 34
 Wright contends that the district court abused its discretion by awarding costs. Awards of costs are generally reviewed for an abuse of discretion. Maxwell v. Hapag-LLoyd Aktiengesellschaft, 862 F.2d 767, 770 (9th Cir.1988). Federal law, however, clearly allows a district court to award costs to a prevailing party. See Fed.R.Civ.P. 54(d). Wright has failed to show that the district court abused its discretion.
 
 
 35
 We also disagree with Wright's contention that the district court erred by granting an indemnity judgment against Wright. The district judge adopted the jury's special advisory verdict which found that Wright was liable for twenty-five percent of the judgment that Asaro and Feinstein obtained against Brady. Wright essentially contends that he cannot be liable for Feinstein's judgment against Brady because Feinstein did not allege any claims against Wright. It is clear, however, that a defendant may seek indemnification from a third party that is jointly responsible for the damages sustained by the plaintiff even when the plaintiff has not named the third party in the original complaint. See American Motorcycle Association v. Superior Court of Los Angeles County, 20 Cal.3d 578, 607, 146 Cal.Rptr. 182, 578 P.2d 899 (1978).
 
 
 36
 Wright also contends that twenty-five percent indemnification is inappropriate because Brady was found liable on five counts and Wright was only found liable on one count. The jury apparently concluded that the technical requirements of several claims pled in the complaint were not met. However, liability on a claim is not inherently related to a defendant's culpability for the underlying wrong. There was sufficient evidence for the jury to find that Wright was culpable for the damages suffered by Asaro and Feinstein. The jury could consistently find that the requirements of only one claim were met, but still conclude that the evidence warranted a finding that Wright should be responsible for twenty-five percent of the damages awarded against Brady.
 
 
 37
 Wright next contends that indemnification for prejudgment interest is inappropriate because he was not found liable under several of the statutes that Asaro relies on to support the award of interest. However, as explained above, Wright may be required to indemnify Brady for an award even if Asaro did not seek a similar award from Wright. Moreover, Asaro's request for interest was also based on section 10(b), and Wright was held liable under that statute.
 
 
 38
 Wright also argues that indemnification for interest is inappropriate because interest had not yet been awarded at the time the jury considered the indemnification action. Wright has produced no authority for this proposition, and we reject it as meritless. In his reply brief, Wright also argues that he may not be required to indemnify Brady because Wright was only found vicariously liable to Asaro. However, this argument is waived because it was not clearly raised in Wright's opening brief. All other arguments that Wright raised for the first time in his reply brief are also waived. Thus, we affirm.
 
 
 39
 Wright has requested attorneys' fees for the work he did on the direct appeal and cross-appeal under 28 U.S.C. § 2412(d)(3). However, section 2412(d)(3) does not authorize a fee award in this action.
 
 
 40
 Each party shall bear its own costs.
 
 
 41
 AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART.