94 F.3d 650
 Fed. Sec. L. Rep. P 99,317
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Christopher and Jane Doe BROWN, et al., Plaintiffs-Appellants,
v.
BENCHMARK POWER CORPORATION, Defendant,
and
Carrington Energy Development Corporation, et al.,
Defendants-Appellees.
 
 1
 No. 95-35578.
 
 
 2
 United States Court of Appeals, Ninth Circuit.
 
 Submitted Aug. 8, 1996.*
Decided Aug. 12, 1996.
 
 3
 Before: BEEZER and O'SCANNLAIN, Circuit Judges, and BROWNING, District Judge.**
 
 
 4
 MEMORANDUM***
 
 
 5
 Plaintiffs Christopher and Jane Doe Brown, et al., appeal the district court's grant of summary judgment in favor of the accounting firm Deloitte & Touche. Plaintiffs asserted a claim in their Third Amended Complaint[1] against Deloitte for securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j). The district court granted summary judgment, and Plaintiffs timely appeal. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 6
 * We review de novo a grant of summary judgment. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 
 7
 Under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j), and the related SEC Rule 10b-5, 17 CFR § 240.10b-5, it is unlawful to engage in manipulative[2] or deceptive conduct in connection with the purchase or sale of securities.
 
 
 8
 The Supreme Court recently held that there can be no liability under § 10(b) or Rule 10b-5 for aiding and abetting. Central Bank of Denver v. First Interstate Bank, 114 S.Ct. 1439, 1445 (1994). Any liability for securities fraud must be direct, that is, for fraud actually committed, not merely aided, by the defendant.
 
 II
 
 9
 Deceptive conduct is material misrepresentation or material failure to disclose. See Santa Fe Indus. v. Green, 430 U.S. 462, 474 (1977). Plaintiffs do not allege that Deloitte made material misrepresentations; they allege only that Deloitte failed to disclose material information that it was required to disclose.
 
 
 10
 Plaintiffs argue that under AICPA Statements on Auditing Standards ("SAS"), auditors have an "affirmative duty to issue a qualified or adverse opinion and make disclosure even if the auditor determines not to complete the engagement. Moreover, the duty to disclose arises when the auditor discovers the irregularity or illegal act, not upon completion of the audit."
 
 
 11
 Plaintiffs' theory fails in two respects. First, the duty to disclose is not so broad, under Ninth Circuit caselaw. Second, even if such a duty to disclose exists, it does not extend to Plaintiffs.
 
 
 12
 * First, the duty to disclose does not impose liability on accountants merely for failing to disclose information about improprieties committed by the company, when that information is obtained while the accountant is engaged as an independent auditor for the company. There must also be some sort of public statement or other affirmative act by the auditor in order for there to be a duty to disclose. The public statement usually takes the form of an audit opinion, but may take other forms as well.
 
 
 13
 In Wessel v. Buhler, 437 F.2d 279 (9th Cir.1971), we specifically interpreted Rule 10b-5 as prohibiting only omissions occurring as parts of an affirmative statement. 437 F.2d at 283. Otherwise, we stated, "the exposure of independent accountants and others to such vistas of liability, limited only by the ingenuity of investors and their counsel, would lead to serious mischief." Id. In SEC v. Seaboard Corp., 677 F.2d 1301 (9th Cir.1982), we held that "[a]n accountant may be liable for direct violation of [Rule 10b-5] if its participation in the misrepresentation is direct and if it knows or is reckless in not knowing that the facts reported in the prospectus materially misrepresent the condition of the issuer." 677 F.2d at 1312. In Seaboard, the accountant's involvement exceeded merely auditing the financial statements; it actively participated in the preparation of the prospectus and registration statement, consented to dissemination of the projections in those documents, made decisions about the time periods to include in the financial reports, etc. Seaboard is consistent with Wessel; the affirmative statement required by Wessel need not be an audit report, but may instead consist of other direct participation in preparing the final documents used to solicit investors.
 
 
 14
 In contrast to the facts in Seaboard, Deloitte's involvement in this case is limited to the preparation of a draft financial statement for discussion purposes. Under the Seaboard requirements, Deloitte cannot be held liable because it did not directly participate in the dissemination of misleading information. Moreover, Plaintiffs do not argue that the draft financial statement suffices to meet Seaboard 's requirement of a public statement; Plaintiffs argue that the duty to disclose attached after Deloitte accepted the audit engagement and discovered the improprieties. Plaintiffs' theory is mistaken.
 
 
 15
 Deloitte had no duty to disclose information it knew about Benchmark.
 
 B
 
 16
 Second, even if Deloitte had a duty of disclosure, it did not extend to Plaintiffs. "The parties to an impersonal market transaction owe no duty of disclosure to one another absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has placed trust and confidence in the other." Jett v. Sunderman, 840 F.2d 1487, 1493 (9th Cir.1988) (citing Chiarella v. United States, 445 U.S. 222, 232 (1980)). If no such relationship or circumstances exist, then the threshold requirement of a duty to disclose has not been met. Id. "When an allegation of fraud [under § 10(b) ] is based on nondisclosure, there can be no fraud absent a duty to speak." Central Bank, 114 S.Ct. at 1447.
 
 
 17
 Here, neither is there a fiduciary relationship between Deloitte and Plaintiffs, nor are the circumstances such that Plaintiffs placed their confidence and trust in Deloitte. Nothing in the PPM or financial statement connected Deloitte to the representations therein, or invited Plaintiffs to rely on the good name of Deloitte. Deloitte labeled the financial statement as a draft, and did not authorize its inclusion with the PPM.
 
 
 18
 Deloitte was not under a duty to disclose to Plaintiffs information relating to Benchmark.
 
 III
 
 19
 The parties also raise the questions whether Deloitte's conduct was "in connection with" the purchase or sale of securities and whether Deloitte had the requisite scienter. Because we hold that Deloitte had no duty to disclose to plaintiffs, we do not reach these additional issues.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 The Honorable William D. Browning, United States District Judge for the District of Arizona, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Plaintiffs first asserted a claim against Deloitte in their Second Amended Complaint for secondary liability. After the Supreme Court held there to be no "aiding and abetting" liability under § 10(b) of the Securities Exchange Act of 1934, Central Bank of Denver v. First Interstate Bank, 114 S.Ct. 1439 (1994), Plaintiffs filed a Third Amended Complaint in which they dropped the claim against Deloitte for secondary liability and added a claim for primary liability
 
 
 [2]
 Plaintiffs allege no manipulative conduct